MOORE, J.
LThe State of Louisiana, through the Department of Transportation & Development (“DOTD”), appeals a judgment assigning permanent total disability (“PTD”) to the claimant, James “Mike” Berry. We affirm.

Factual Background

Berry was employed as a laborer by DOTD. At the time of his injury in March 1986, his average weekly wage was $856.25, yielding a workers’ comp rate of $237.50 per week. On the day of the accident, he was working with a crew to clear brush and foliage from the side of La. Hwy. 17 in West Carroll Parish. While operating a chainsaw, he lost his footing on a steep ditch bank and fell, badly injuring his lower back.
DOTD acknowledged that the accident occurred and was work-related; it immediately placed him on temporary total disability (“TTD”), converting this in 1987 to supplemental earnings benefits (“SEB”), which it has continued to pay ever since. It has also paid for three major back surgeries [1] and three other orthopedic surgeries that stemmed from the back injury,[2] all performed by Dr. Doug Brown, an orthopedist in Monroe. Dr. Brown’s reports over the years usually stated that Berry was completely unable to work but encouraged him to try to be active. Berry has also sought pain management with Dr. Vincent Forte since 2000, undergone a 12series of epidurals, received heavy doses of opioid pain medicine, and reported bouts of depression.
Berry testified that in the late 1980s, DOTD’s adjuster, John Atkins, advised him to be active and “do something, volunteer,” so he went to the Oak Grove Volunteer Fire Department and, later, helped form the Forest Volunteer Fire Department, where he was a volunteer, intermittently, for over 20 years, until May 2011. He testified that he never actually went to a fire, but made phone calls and scheduled training sessions for the other volunteers. He insisted he was never paid for this work, but admitted that in 2008-2010 he claimed a $500 tax credit for his services as fire chief. He also testified that around 2005, he allowed his son, Zach, whose wife had just given birth to a severely disabled child, to use a shed on his (Berry’s) property for a woodworking business called MOZAC, to supplement Zaeh’s income. Berry testified that he may have cut a little wood for Zach, talked to customers and sold MOZAC’s chairs and swings, but maintained this was just to help out his son: he was never paid for it. He also admitted that on his 2005 tax return, he reported a $4,900 profit or loss from business, and on his 2006 return, $8,768, but testified this was actually MOZAC’s income, which he and his wife misreported to protect Zach from creditors.
Apparently owing to the tax credits and income reported on Berry’s returns, and *272 his frequent comments to Dr. Brown about his volunteer work with the Forest Fire Dept., DOTD’s claims adjuster, FARA Insurance Services, began to investigate Berry’s status. FARA hired a private investigator, Alvin Ronquille, to conduct video surveillance on Berry in |sMarch and August 2010. Ronquille videoed Berry riding a tractor and plowing a garden at his home place on Hwy. 582 in Oak Grove, putting a large piece of glass in a pickup truck at the Forest Fire Dept., and dragging garbage cans out to the highway while riding a scooter. Ronquille also went to Berry’s property to buy a wooden chair; Berry had no chairs at the time, having just sold them all to local nursing homes, but said “he would make him one.” Ronquille came back sometime later and bought a chair for $125. Ronquille also videoed MOZAC’s street sign, which listed Berry’s home phone, and got one of its business cards, which listed Berry and his son as “operators.”

Procedural History

DOTD filed the instant Form 1008 in November 2010, demanding forfeiture of all benefits for fraud under La. R.S. 23:1208. Mediation was unsuccessful; in an August 2012 amended pretrial statement, DOTD alleged that in the alternative it was also contesting the “nature, extent and duration” of Berry’s disability.
At trial in May 2018, DOTD called Berry on cross-examination. He testified as outlined above, adding that Dr. Brown told him he had reached maximum medical improvement 20 years ago but had never released him to return to work. He admitted he could walk and do some paperwork, and wished he could work, but his back and legs were in constant pain, and the host of medications he was taking impaired his memory.[3] He insisted he volunteered at the fire departments and helped his son’s woodworking ^business just to keep busy, and never made any income from these pursuits, although he did claim the statutory tax credit and some of his son’s income on some tax returns. He admitted doing the activities captured on the videos, but said that after he sits down for about 20 minutes his “legs just go ballistic.” On direct examination, he stated he had resigned from the Forest Fire Dept, in 1997 and again in 2010, but they kept calling him back; he finally retired in May 2011.
Berry’s wife, Patsy, corroborated most of his testimony, admitting that she had claimed Zach’s income on their tax returns.
Alvin Ronquille testified as to the surveillance he conducted; the DVDs were admitted into evidence and played for the court. He admitted that over three days of video surveillance, Berry was riding the tractor perhaps five or six minutes, and there was “lots of time” he was not doing anything.
Finally, FARA’s senior claims examiner, Daniel Mizell, described the long history of Berry’s claim. He referred to portions of Dr. Brown’s reports stating that Berry can work if he “can rest and control his activity” (April 1987), “can continue at same level of work” (1995), “can do sedentary work if he can move and change positions” (October 2001), and was “capable of some light duty work” (January 2012). In response to Mizell’s request, Dr. Brown had viewed the surveillance videos and handwritten, “Video says it all.” Mizell felt that Berry’s disability status was SEB.
|sAt the close of DOTD’s case, Berry moved for involuntary dismissal. The *273 WCJ granted this as to the forfeiture claim under § 1208, and DOTD does not contest this ruling on appeal. However, the WCJ denied the motion as to classification of disability, and the trial proceeded.
Berry testified on direct examination, graphically describing the residual weakness going from his waistline down his right leg, the “pins and needles” in his leg, the “fire in his thigh,” and the fact that he cannot even lie on his back; his stunning weight gain, from 185 lbs. at the time of the injury to 355 lbs. today, owing to lack of physical activity and the cocktail of medications; that one of DOTD’s earlier adjusters, Atkins, originally suggested the volunteer work, and another one, Ms. Radial, authorized him to get the motorized scooter and to have a walk-in tub installed at his house. Berry also offered his expansive medical records, including those of Dr. Brown, dating back to 1986; Dr. Vincent Forte, at Louisiana Pain Care; Dr. Bernie McHugh, Ouachita Neurosurgery Center; and Dr. Jorge Martinez, a neurological surgeon retained by DOTD.

Action of the WCJ

The WCJ ruled that despite Berry’s history with the fire department and the images on the videos, the court “cannot rely simply on what appears to be the case.” The court found that Dr. Brown had been the treating physician “for a very extensive period,” giving great weight to his opinion, and two of his most recent reports (November 1, 2011, and June 15, 2012) both declared Berry unable to work; Dr. Martinez’s report, dated February 20, 2012, also found him unable to work. The court therefore found Berry | fiwas entitled to PTD benefits. DOTD has appealed.

The Parties’ Positions

By its sole assignment of error, DOTD urges the WCJ erred in granting PTD status to Berry. It concedes the manifest error rule as to factual findings and the vast discretion accorded to credibility calls, Bruno v. Harbert Int’l Inc., 593 So.2d 357 (La.1992). However, it argues the claimant’s burden is clear and convincing evidence, La. R.S. 23:1221(2)(c), a standard intended to make awards of PTD “almost nonexistent,” H. Alston Johnson III, Workers’ Compensation Law & Practice (13 La. Civ. L. Treatise), § 275 (4 ed.2010). It contends that when the claimant admits at trial that he can perform light, sedentary work, he is not entitled to PTD, Daugherty v. Domino’s Pizza, 95-1394 (La.5/21/96), 674 So.2d 947; Keasley v. Transit Management of Southeast La., 2010-0786 (La.App. 4 Cir. 12/7/10), 52 So.3d 976. It also shows that in January 2012, after viewing the surveillance videos, Dr. Brown “was not as emphatic in declaring Berry capable of sedentary work” as in his June 2012 report, which allowed the possibility of sedentary work. It also shows that Dr. Forte wrote, “I agree that he could do sedentary work[.]” DOTD submits that when the treating physician finds that the claimant can work, however restricted, he is not entitled to PTD, Weller v. Brown, 97-2155 (La.App. 1 Cir. 11/6/98), 724 So.2d 230, writ denied, 99-2872 (La.12/10/99), 751 So.2d 856. DOTD concludes that with Berry’s own admissions at trial, and the treating physicians’ ambivalent reports, he did not meet the clear and convincing standard required by R.S. 23:1221(2)(c). It urges reversal.
|7Berry responds that the WCJ committed no abuse of discretion. He shows that for Ronquille’s three days of surveillance, he got exactly five minutes of Berry riding a tractor, a few minutes of putting glass in a truck and dragging garbage cans on a scooter, but no other activities. Berry also shows that six months after viewing the video, Dr. Brown reiterated his earlier opinion of total disability, and cites Dr. Martinez’s opinion, “I do not feel the pa *274 tient will be a candidate for any gainful work type activities.” He submits that his showing of PTD was equivalent to that in Dennis v. Boh Bros. Const. Co., 39,548 (La.App. 2 Cir. 4/6/05), 899 So.2d 761, writ denied, 2005-1178 (La.11/28/05), 916 So.2d 145, which affirmed a finding of PTD despite an examining physician’s opinion that the claimant could lift 25 lbs. He urges this court to affirm.

Discussion

The award of PTD is governed by La. R.S. 23:1221(2), which provides in pertinent part:
(2) Permanent total
(a) For any injury producing permanent total disability of an employee to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, [66%%] of wages during the period of such disability.
(b) For purposes of Subparagraph (2)(a) of this Paragraph, compensation for permanent total disability shall not be awarded if the employee is engaged in any employment or self-employment regardless of the nature or character of the employment or self-employment including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain.
ls(c) For purposes of Subparagraph (2)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subparagraph (2)(b) of this Paragraph, compensation for permanent total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including, but not limited to, any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.
In short, a claimant seeking PTD benefits bears the burden of proving, by clear and convincing evidence, his inability to engage in any type of employment. Morgan v. Glazers Wholesale Drug Co., 46,692 (La.App. 2 Cir. 11/2/11), 79 So.3d 417; Conerly v. Triad Nitrogen, 2012-2032 (La.App. 1 Cir. 8/14/13), 123 So.3d 273, writs denied, 2013-2441, 2013-2515 (La.1/10/14), 130 So.3d 329, 330. Since the 1983 amendments to R.S. 23:1221(2), evidence that a claimant could not return to any gainful employment without suffering substantial pain is no longer sufficient to support an award of PTD. Comeaux v. City of Crowley, 2001-0032 (La.7/3/01), 793 So.2d 1215; Morgan v. Glazers Wholesale Drug Co., supra.
Whether the claimant has carried his burden of proof and whether testimony is credible are questions of fact to be determined by the WCJ. Morgan v. Glazers Wholesale Drug Co., supra, and citations therein. The factual findings of the WCJ are subject to manifest error review. Dean v. Southmark Const. Co., 2003-1051 (La.7/6/04), 879 So.2d 112. The appellate court does not determine whether the WCJ’s factual findings and credibility calls are right or wrong, but only whether they are reasonable. | JBuxton v. Iowa Police Dept., 2009-0520 (La.10/20/09), 23 So.3d 275. The manifest error standard applies even when the WCJ’s decision is based on *275 written reports, records or depositions. Bruno v. Harbert Int’l Inc., supra; Morgan v. Glazers Wholesale Drug Co., supra.
As a general rule, the testimony of a treating physician is accorded greater weight than that of one who examines a patient only once or twice. Morgan v. Glazers Wholesale Drug Co., supra, and citations therein. The treating physician’s opinion, however, is not irrebuttable, and the WCJ is required to weigh the testimony of all medical witnesses. Id.; see also Miller v. Clout, 2003-0091 (La.10/21/08), fn. 3, 857 So.2d 458.
Berry testified that he had not worked since his final retirement from the Forest Fire Dept, in May 2011; thus, his burden of proof was that stated in R.S. 28:1221(2)(c), clear and convincing evidence that he is unable to engage in any type of employment, with no presumption of disability and no regard for whether such work would be in pain. Even the impassive record shows that Berry’s current condition transcends “working in pain” and reaches a level at which any employment or self-employment is simply not physically possible. He admitted that he could sit for a short while, but the pain radiating down his right leg and in the soles of his feet was a torment and a distraction to concentration or sustained work effort. He also testified that the host of pain and other prescribed medications impaired his memory. These are clear and convincing facts from which the WCJ could reasonably find that Berry cannot engage in any employment or self-employment, because of his physical limitations and not merely because such | memployment would require him to work in pain.
Berry’s medical records provide some evidence that at times some doctors felt he could do limited, sedentary work: Dr. Brown’s response to FARA’s inquiry of January 12, 2012, had in his handwriting “sedentary” and “video says it all,” and Dr. Forte’s response of January 21, 2011, stated, “I agree that he could do sedentary work.” However, the overwhelming thrust of the record is that he is totally disabled, starting with the fact that he reached maximum medical improvement in 1987 and underwent numerous major surgeries, including five within 10 years of trial. After his somewhat ambiguous report of January 2012, Dr. Brown wrote in June 2012, “This patient * * * is unfit for work unless he could work from bed on his side doing something in the extremely sedentary position which is unlikely. * * * His condition is permanent and, in fact, progressive^]” Even Dr. Forte’s response of January 2011 is hedged: “I also agree that it is unlikely that he will be able to perform sustainable work.” The examining neurologist, Dr. Martinez, stated in. February 2012, “I feel the patient is not able to perform any gainful work type activities. * * * I do not feel the patient will be a candidate for any gainful work type activities.” The statute does not require unanimity of medical opinion, only clear and convincing evidence, and this medical record supports the WCJ’s findings.
Finally, we have closely examined the record for evidence that Berry was in fact working. He and his wife explained that the income reported in 2005 and 2006 was actually his son’s income; the WCJ commented that this was a perhaps dishonest scheme to help their son but not proof that Berry factually earned anything those years. Berry also testified that he helped his son’s woodworking business by allowing him to use his workshop and home phone, talking to customers and occasionally cutting a little wood. Finally, Berry testified that the modest tax credit he claimed in 2008-2010 was a statutory bene *276 fit for volunteer firefighters and did not reflect any actual income.[4] DOTD presented no evidence to contradict these explanations or to overturn the WCJ’s finding that Berry did not earn income in those years.
The video surveillance presents a somewhat closer question, and probably justified DOTD in questioning Berry’s disability status. For three days of surveillance, however, Ronquille captured perhaps six minutes of Berry performing physical activity, part of which was only riding a scooter to pull garbage cans to the highway. Berry candidly admitted that he could sit on a tractor for 20 minutes, but had trouble getting on and off, could not change implements on it, and could not do this “for money.” These activities are consistent with Dr. Brown’s longstanding advice to “do something” to ease his pain and improve his mental outlook; occasional spurts of activity do not defeat a valid PTD claim. Comeaux v. City of Crowley, supra; Conerly v. Triad Nitrogen, supra; Dennis v. Boh Bros. Const. Co., supra. This evidence does not undermine the WCJ’s finding that Berry cannot engage in any employment or self-employment. The assigned error does not warrant reversal.

11⅞Conclusion

For the reasons expressed, the judgment is affirmed. Costs are not assessed. La. R.S. 13:4521.
AFFIRMED.

. The June 1986 surgery, at St. Francis, was a right L4-5 laminectomy, left L4-5 facetec-tomy and foraminotomy, noted as "not herniated disc”; the July 2004 surgery was a de-compressive laminectomy at L3-4-5 with Gill decompression, transverse process fusion and bone graft; the June 2008 surgery, at P & S Surgical Hospital, was a stable pedicle screw construct and right lumbosacral nonunion fusion.

. The January 2003 surgery, at Glenwood, was to debride a shoulder injury from a fall that occurred when Berry suddenly lost strength in his legs; the July 2006 surgery, at St. Francis, was to excise a sinus tract from a toe on his right foot, resulting from chronic loss of sensation to the foot; the November 2007 surgery, at Ouachita Community Hospital, was for CMC fusion of his left thumb.

. He mentioned Celebrex (an NSAID), Nucyn-ta (a narcotic pain reliever), Elavil (an antidepressant) and Neurontin (a seizure preventive).

. The volunteer firefighter deduction created, by La. R.S. 47:293(7)(a) and (7)(b), presupposes no actual income from such service and required 24 continuing education hours annually.