GARRETT, J.
hln this workers’ compensation ease, the claimant, Steven Harris, appeals from a judgment denying his claims for underpayment of benefits and for permanent total disability (“PTD”) benefits, as well as penalties and attorney fees. We affirm.
FACTS
In 1991, the claimant began working as a fireman for the City of Bastrop (“the City”). He injured his left knee at work in 1992 or 1993, but returned to his job following several surgeries. On June 1, 2001, he injured his right knee while removing a smouldering mattress from a house after a fire. From June 1, 2001 to June 1, 2002, the claimant received the statutory sick leave benefits for firemen for 52 weeks. At the conclusion of this period, the City began paying him temporary total disability (“TTD”) benefits of $359 per week pursuant to La. R.S. 23:1221(1).
In August 2002, the claimant’s TTD benefits were converted to supplemental earning benefits (“SEBs”). The claimant began receiving SEBs of $691.83 per month after his vocational rehabilitation counselor identified two jobs for him, which were approved by his orthopedic surgeon, Dr. William Bundrick. Both jobs were in the Monroe area. An accounting clerk position for the Holiday Inn Holidome involved semiskilled work and paid $16,000 to $17,000; the employer provided the training. The vocational rehabilitation counsel- or used $8.59 as the hourly rate for this job.[1] The other job was a customer service representative position for Regional Medical Rental, which paid $6.25 to $6.50 per hour. |2It was also semi-skilled, sedentary work; however, it was unclear whether the employer would provide the training. The evidence at trial, which occurred more than 11 years after the conversion of the TTD benefits to SEBs, indicated that the SEBs were determined by using an average of the hourly rates for the customer service job ($6.37) in conjunction with the rate for the Holidome job in order to determine an average of $7.48 per hour.
The claimant received SEBs for the statutory maximum of 520 weeks provided in La. R.S. 23:1221(3)(d). The record does not indicate that the claimant ever complained about the amount of the SEBs until they were about to expire. At the conclusion of this time period, he filed a disputed claim form with the Office of Workers’ Compensation seeking PTD benefits under La. R.S. 23:1221(2). In the claim filed on September 8, 2011, he also alleged that the City had underpaid him by giving him $691.83 per month, instead of $393.67 per week[2] or $1,705.90 per month.
In its answer, the City admitted that the claimant was an employee who injured his right knee while in its employ. However, it denied that the claimant sustained a disabling injury as a result of the June 2001 incident. It alleged that the claimant had multiple other disabling conditions un *952 related to the incident and his employment with the City. In the alternative, the City asserted several rights, including the right to seek credits or offsets against compensation benefits should the claimant return to work and the right to reduce benefits pursuant to La. R.S. 23:1206 and 1225.
|Jn November 2012, the City filed a reconventional demand in which it alleged that the SEBs were overpaid for four months and requested reimbursement in the amount of $2,767.32.
In January 2013, the City filed an amended and supplemental reconventional demand in which it alleged that the claimant had engaged in fraudulent requests for mileage reimbursement to receive medical treatment when (1) he had already been compensated, and (2) he had not even received medical treatment.[3]
Trial was originally scheduled for October 11, 2012. However, the day before trial, the claimant went to see his pain management doctor, Dr. John Ledbetter. The claimant stated that he had a hearing the next day and wanted a letter stating that he could not work in any capacity. After reviewing a prior functional capacity evaluation (“FCE”), Dr. Ledbetter said he would not change his recommendation without a new FCE. Trial was delayed, and a new FCE was done in January 2013.[4] However, the FCE apparently did not test for sedentary work. Additionally, in one copy of the report it was stated that the claimant “would be unable to perform the demanding activities of a fireman,” while another copy stated he “would be unable to return to gainful employment.” Given the discrepancy in the report results, the failure of the FCE to test for sedentary work, and the fact that the claimant’s orthopedist, Dr. Bundrick, had approved a sedentary job |4for the claimant at about the same time as the FCE, another FCE was scheduled. After the claimant refused this FCE, the City filed a motion to compel.
A hearing was held on the motion to compel on April 12, 2013. Following testimony from Della Hildenbrand, an adjuster for Risk Management, Inc., the WCJ granted the motion to compel. The WCJ concluded that, in order to determine whether the claimant was entitled to PTD benefits, she would have to conclude that he could not perform any type of work. The WCJ said that because the most recent FCE did not test for sedentary work, it could not be relied upon. Subsequently, the claimant filed a motion for a protective order against a two-day FCE in Bossier City. The WCJ denied the motion for protective order, finding that the City was entitled to have the claimant examined by a physical therapist of its choice.
Trial was held on October 17, 2013. The parties stipulated to a work-related accident, an average weekly wage of $538.68, and a compensation rate of $359.12. The 49-year-old claimant testified during his case-in-chief and again on rebuttal. He stated that his knees hurt and were swollen almost all the time. He recited the many prescription medications he currently takes, which include narcotics for pain. He stated that he had knee replacement surgery on the left knee and desired the same on the right knee. The claimant also testified about his unsuccessful efforts to secure employment. He testified that no *953 one would hire him because of his physical limitations and his use of narcotic pain medications. However, he also admitted that he volunteered his use of narcotics to potential employers |fiand that in October 2012, he sought a letter from Dr. Ledbet-ter declaring his inability to work in any capacity. While he admitted that he occasionally rides a four-wheeler and is able to drive to Arkansas once a week and Texas “a couple times” per year, he asserted that he cannot work in any capacity and had been unsuccessful in developing new skills.
The claimant’s medical records from Dr. Bundrick were admitted into evidence in support of his case, as was the deposition of Dr. John Ledbetter, the claimant’s pain management doctor, and medical records from his office, Louisiana Pain Care. The claimant also introduced the deposition of Ted Parker, the owner of Med Life Ambulance in Bastrop, with whom the claimant had unsuccessfully interviewed for a dispatcher job. The City submitted the deposition of Dr. Bundrick and presented the testimony of Ms. Hildenbrand. The City also proffered the August 2013 FCE report; however, as it was not deemed properly certified, the report was not admitted into evidence. At the conclusion of the testimony, the WCJ requested briefs from the attorneys.
On January 13, 2014, the WCJ provided extensive oral reasons for judgment. We note at the outset that it is obvious that the WCJ had extensively reviewed all the evidence, including the depositions, and also thoroughly and correctly explained all of the law applicable to the issues before her. After recounting the claimant’s work history, the WCJ recited the medical information found in the depositions of Drs. Bundrick and Ledbetter. Dr. Bundrick opined that the claimant was capable of sedentary work, and Dr. Ledbetter believed that the claimant’s medications precluded | nonly “potentially risky” jobs. Based upon the doctors’ opinions, the WCJ found that the claimant had failed to carry his burden of proving an incapacity to perform any work; thus, his claim for PTD benefits was denied. The WCJ then analyzed the SEBs that had been paid since 2002 and the plaintiffs contention that he had been underpaid. Of the two jobs found by the vocational/rehabilitation counselor in 2002, the WCJ held that only enough information was provided on the job at the Holiday Inn Holidome and that it was sufficient to reduce the claimant’s TTD benefits to SEBs. She denied all other requests with prejudice and assessed all costs to the claimant. Judgment in conformity with the oral reasons was signed on March 12, 2014. The WCJ ordered that the claimant’s SEBs be adjusted using a $7.69 per hour rate for the Holidome job instead of the $7.48 per hour averaged rate for the two jobs.[5] All other claims, including penalties and attorney fees, were denied.
The claimant appealed.
WORKERS’ COMPENSATION BENEFITS
The claimant contends that the WCJ erred in denying his claim of underpayment of his benefits based on the two jobs identified by his employer. He further asserts that the WCJ erred in failing to award PTD benefits.
| '¡Standard of Review
Whether the claimant has carried his burden of proof and whether testimony is credible are questions of fact to be *954 determined by the WCJ. State, DOTD v. Berry, 49,186 (La.App.2d Cir.8/13/14), 147 So.3d 270; Nivens v. Fields, 46,524 (La.App.2d Cir.11/16/11), 79 So.3d 1144. The factual findings of the WCJ are subject to manifest error review. Buxton v. Iowa Police Dept., 2009-0520 (La.10/20/09), 23 So.3d 275. The appellate court does not determine whether the WCJ’s factual findings and credibility calls are right or wrong, but only whether they are reasonable. Buxton v. Iowa Police Dept., supra.
When there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of 'fact should not be disturbed upon review, even though the appellate court may feel its own inferences and evaluations are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989); Morgan v. Glazers Wholesale Drug Co., 46,692 (La.App.2d Cir.11/2/11), 79 So.3d 417. Where there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. State, Dept. of Transp. & Dev., 617 So.2d 880 (La.1993); Morgan v. Glazers Wholesale Drug Co., supra. The manifest error standard applies even when the WCJ’s decision is based on written reports, records or depositions. Bruno v. Harbert Int’l Inc., 593 So.2d 357 (La.1992); Buxton v. Iowa Police Dept., supra; State, DOTD v. Berry, supra.
The trial court is in a superior position to evaluate the credibility of witnesses than is the appellate court. Thomas v. GM Benefits & Serv. Ctr., 48,718 (La.App.2d Cir.1/15/14), 132 So.3d 464. The trier of fact’s determinations as to whether the worker’s testimony is credible and whether the worker discharged the burden of proof are factual determinations, not to be. disturbed upon review unless clearly wrong. Thomas v. GM Benefits & Serv. Ctr., supra.

SEBs

The claimant maintains that the City underpaid his SEBs and that he is entitled to a lump sum payment as a consequence. He further claims that the City failed to prove the existence of suitable jobs in his area that were offered to him. Because these complaints were not lodged until September 2011, the WCJ was placed in the position of analyzing events that began in 2002.
An employer may not shift an employee’s indemnity benefits from TTD to SEBs in the absence of an appropriate justification. Hollingsworth v. Steven Garr Logging, 47,884 (La.App.2d Cir.2/27/13), 110 So.3d 1219. Without a change in medical condition or identification of jobs available which claimant could perform, an employer or workers’ compensation carrier has no basis upon which to change a workers’ compensation claimant’s classification from TTD benefits to SEBs. Marks v. 84 Lumber Co., 2006-358 (La.App. 3d Cir.9/27/06), 939 So.2d 723.
The purpose of SEBs is to compensate an injured employee for the wage-earning capacity he has lost as a result of his work-related accident. Banks v. Indus. Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551; Patterson v. General Motors Co., 46,559 (La.App.2d Cir.9/21/11), 73 So.3d 465. An employee is entitled to receive SEBs if he sustains a work-related accident that results in his inability to earn 90% or more of his average pre-injury wage. La. R.S. 23:1221(3)(a). Initially, the employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in his inability to earn that amount under the facts and circumstances of the individual case. Banks v. Indus. Roofing & Sheet Metal Works, Inc., supra.
*955 Once the employee’s burden is met, the burden shifts to the employer who, in order to defeat the employee’s claim for SEBs or to establish the employee’s earning capacity, must prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his community or reasonable geographic region. La. R.S. 23:1221(3)(c)(i); Banks v. Indus. Roofing & Sheet Metal Works, Inc., supra; Clay v. Our Lady of Lourdes Reg’l Med. Ctr., Inc., 2011-1797 (La.5/8/12), 93 So.3d 536; Lee v. Heritage Manor of Bossier City, 41,828 (La.App.2d Cir.3/14/07), 954 So.2d 276, writ denied, 2007-0736 (La.5/18/07), 957 So.2d 157. Actual job placement is not required. Lee v. Heritage Manor of Bossier City, supra; Clay v. Our Lady of Lourdes Reg’l Med. Ctr., Inc., supra.
A “suitable job” is one that the claimant is not only physically capable of performing, but one that also falls within the limits of the claimant’s age, experience, and education, unless, of course, the employer or potential employer is willing to provide any additional necessary training |inor education. Banks v. Indus. Roofing & Sheet Metal Works, Inc., supra; Morrison v. First Baptist Church of W. Monroe, 45,277 (La.App.2d Cir.5/19/10), 36 So.3d 1201.
To be entitled a reduction in the claimant’s maximum benefits, the employer is not required to place the claimant in a suitable job. Rather, the employer must only prove the availability of such suitable jobs. Dabney v. Boh Bros. Const. Co., 97-1041 (La.App. 4th Cir.3/11/98), 710 So.2d 1106.
The amount of SEBs is based upon the difference between the claimant’s pre-injury average monthly wage and the claimant’s proven post-injury monthly earning capacity. Morrison v. First Baptist Church of W. Monroe, sotpra.
The claimant argues that the City failed to prove that (1) the two jobs utilized in calculating an offset to his SEBs existed, (2) were in his geographical area, and (3) were offered to him. However, the jurisprudence does not require that the City actually place him in a job. It was only required to show that such jobs existed. Although the claimant insists that the jobs were not in his geographical area, the claimant obviously has a driver’s license and is able to drive when and where it suits him, as demonstrated by his weekly trips to Arkansas and his trips to Texas several times a year.[6] He even has the ability to occasionally ride a four-wheeler, presumably for pleasure and entertainment.
|nThe claimant also contends that he was unable to secure employment due to his use of narcotics for his pain. However, the record strongly suggests that the claimant effectively “self-sabotaged” his chances of employment by immediately informing prospective employers of the medications and painting a much darker picture of his usage than did Dr. Ledbetter, his pain management doctor. The claimant’s questionable attitude toward securing employment is perhaps best exemplified by the incident when, the day before a hearing, he tried to get Dr. Ledbetter’s office to give him a letter declaring he could not work in any capacity.- The record supports the WCJ’s decision to reject *956 the claimant’s self-serving “self-assessment” concerning his inability to work.
In working out. the propriety of the SEBs payments, the WCJ apparently concluded that the City had made two mistakes. First, it used the wrong hourly rate for the Holidome job; for a job with a minimal annual salary of $16,000, the hourly rate would be $7.69, not $8.59. Also, the City incorrectly considered the Regional Medical Rental job involving semiskilled work when it was unclear whether the employer would provide training. The WCJ determined that the claimant’s SEBs should have been calculated using the $7.69 hourly rate, not the incorrect averaged rate of $7.48. As a result of the recalculation, the SEBs to the claimant were overpaid, not underpaid as he asserted.
The claimant argued that the calculations of the SEBs were flawed and demanded an award compensating him for the mistake. When reviewing the issue, the WCJ determined that the calculations were, in fact, [^flawed — but to the claimant’s benefit, not to his detriment. Consequently, the claimant is not entitled to the lump sum award for underpayment he seeks. Furthermore, since the City’s re-conventiorial demands were deemed improperly filed, the City is not entitled to a judgment reimbursing it for its overpay-ments.
Based on the foregoing, we find no manifest error in the WCJ’s resolution of the issues pertaining to the SEBs paid to the claimant.

Entitlement to PTD Benefits

The claimant argues that the WCJ erred in finding that he failed to prove by clear and convincing evidence that he was entitled to PTD benefits.
A claimant seeking PTD benefits bears the burden of proving, by clear and convincing evidence, his inability to engage in any type of employment. State, DOTD v. Berry, supra. The clear and convincing standard in a workers’ compensation case is an intermediate standard falling somewhere between the ordinary preponderance of the evidence civil standard and the beyond a reasonable doubt criminal standard. To prove a matter by clear and convincing evidence means to demonstrate that the existence of the disputed fact is highly probable or much more probable than its nonexistence. Hollingsworth v. Steven Garr Logging, supra.
The claimant’s treating physicians testified by deposition. In his April 2013 deposition, Dr. Bundrick testified that he had been treating the claimant since 1998. As the claimant’s treating orthopedist, he found that the claimant was physically able to do sedentary work. In fact, as recently hsas February 2013, Dr. Bundrick had approved a sedentary job description for the claimant. On the issue of the claimant’s use of pain medications, Dr. Bundrick deferred to Dr. Ledbetter. However, Dr. Bundrick opined that people taking medication could still work, as could people in wheelchairs.
In his March 2013 deposition, Dr. Led-better deferred to Dr. Bundrick as to the claimant’s ability to perform an activity. As to the claimant’s use of medications, Dr. Ledbetter testified that he had done reasonably well on a “modest dose” of narcotics and adjunctive type medicines. He described the claimant as being on a “pretty stable dose,” which was a “pretty light dose for a guy his size.” According to Dr. Ledbetter, a person who has been on a stable dose of narcotics for an extended time has reflexes as good as someone not on it. The claimant’s reflexes were tested and he was cleared to drive.
*957 Based upon the evidence presented at trial, particularly the medical testimony from the claimant’s own treating physicians, we find no manifest error in the WCJ’s holding that the claimant failed to prove his entitlement to PTD benefits.
PENALTIES AND ATTORNEY FEES
The claimant asserts that the WCJ erred in failing to award penalties and attorney fees to the claimant for wrongful reduction of benefits and underpayment.
Awards of penalties and attorney fees in workers’ compensation cases are essentially penal in nature, being imposed to discourage indifference and undesirable conduct by employers and insurers. Iberia Medical Ctr. v. Ward, 2009-2705 (La.11/30/10), 53 So.3d 421. Although the Workers’ Compensation Act is liberally construed as to benefits, its penal provisions are strictly construed. Iberia Medical Ctr. v. Ward, supra. Arbitrary and capricious behavior consists of “willful and unreasoning action, without consideration and regard for the facts and circumstances presented, or of seemingly unfounded motivation.” Futch v. Horseshoe Casino, 49,144 (La.App.2d Cir.7/23/14), 146 So.3d 818, writ denied, 2014-1934 (La.11/21/14), 160 So.3d 973, 2014 WL 6725722.
The WCJ has great discretion in awarding or denying penalties and attorney fees. The WCJ’s decision concerning whether to assess statutory penalties and attorney fees will not be disturbed absent an abuse of discretion. Slade v. State ex rel. Univ. of La. at Monroe, 46,720 (La.App.2d Cir.11/9/11), 79 So.3d 463.
An unsuccessful claimant is not entitled to penalties and attorney fees. Patterson v. General Motors Co., supra; Fox v. Reynolds Indus. Contractors, Inc., 48,660 (La.App.2d Cir.2/13/14), 135 So.3d 105.
Given the fact that the claimant was unsuccessful, we do not find that the WCJ abused her discretion when she denied him an award of penalties and attorney fées.
COSTS
The claimant argues that the WCJ erred in failing to order the employer to pay all costs of the proceedings. Under La. R.S. 23:1317(B), the question of awarding costs lies within the sound discretion of the workers’ compensation judge, as it does with the district court judges under | iSthe general civil provisions. Boleware v. City of Bogalusa, 2001-1014 (La.App. 1st Cir.12/20/02), 837 So.2d 71. Inasmuch as the employee was not the successful litigant, we find no abuse of the WCJ’s discretion in assessing all costs against him.
CONCLUSION
The judgment of the WCJ is affirmed. Costs are assessed to the appellant, Steven Harris.
AFFIRMED.

. This rate was incorrect. By our calculation, the hourly rate for a job paying between $16,000 and $17,000 should have been between $7.69 and $8.17 per hour.

. This amount was based on an average weekly wage of $590.51.

. At trial, it was determined that neither of the City’s reconventional demands was filed with the WCJ's permission; consequently, they were considered as not filed and the issues they presented — overpayment and fraud — were deemed moot by the WCJ and no evidence was allowed on them.

. The City refused to pay for this FCE after learning that it was not medically necessary.

. As explained later in this opinion, this calculation actually resulted in. an overpayment of SEBs to the claimant.

. As noted by the City, in Bankston v. Scaffolding Rental & Erection Servs., Inc., 513 So.2d 307 (La.App. 1st Cir.1987), jobs found within 30 miles of the claimant’s home were deemed available to the claimant. In the instant case, the jobs at issue were in Monroe, approximately 30 miles from the claimant's home in Bastrop.