| MARK SHUBERT | * | NO. 2024-CA-0686 |
|---|---|---|
| VERSUS | * | COURT OF APPEAL |
| CITY OF NEW ORLEANS | * | FOURTH CIRCUIT |
| | * | STATE OF LOUISIANA |

* * * * * * *

APPEAL FROM
THE OFFICE OF WORKERS' COMPENSATION
NO. 21-05151, DISTRICT "08"
HONORABLE Catrice Johnson-Reid, The Office of Workers' Compensation
* * * * * *
**JUDGE SANDRA CABRINA JENKINS**
* * * * * *
(Court composed of Judge Joy Cossich Lobrano, Judge Sandra Cabrina Jenkins, Judge Rachael D. Johnson)

**LOBRANO, J., CONCURS AND ASSIGNS REASONS**

William R. Mustian, III
STANGA & MUSTIAN, APLC
3117 22nd Street
Suite 6
Metairie, LA 70002

      COUNSEL FOR PLAINTIFF/APPELLEE


Eric K. Buerger
Roger A. Javier
Darcy E. Decker
THE JAVIER LAW FIRM, LLC
1340 Poydras Street, Suite 2100
New Orleans, LA 70112

      COUNSEL FOR DEFENDANT/APPELLANT

**AFFIRMED**
**MARCH 28, 2025**

SCJ
RDJ

This is a workers' compensation matter. The City of New Orleans, New Orleans Fire Department ("City"), appeals the March 13, 2023 judgment of the workers' compensation judge ("WCJ") in favor of the claimant, Mark Shubert ("Mr. Shubert"). The WCJ ruled that the City was arbitrary and capricious in its reduction of Mr. Shubert's benefits, and ordered that his benefits be reinstated back from June 17, 2022 at a rate of six hundred thirty dollars ($630.00) per week. The WCJ also found that Mr. Shubert was entitled to penalties in the amount of two thousand dollars ($2,000.00) and attorney's fees in the amount of four thousand dollars ($4,000.00). Mr. Shubert filed an answer to the appeal, requesting an additional award of two thousand five hundred dollars ($2,500.00) in attorney's fees for the extra expense incurred in the continued litigation before this Court. For the reasons that follow, we affirm the March 13, 2023 judgment and award Mr. Shubert an additional two thousand five hundred dollars ($2,500.00) in attorney's fees.

## FACTS AND PROCEDURAL HISTORY

Mr. Shubert was employed as a firefighter for approximately thirty-four years. Mr. Shubert injured his lower back on July 12, 2015 while lifting a large person on

1

a medical roll. The City began paying Mr. Shubert temporary total disability benefits ("TTD") pursuant to La. R.S. 23:1223.[1] He was provided vocational rehabilitation services by CorVel Corporation ("CorVel"). Mr. Shubert treated with Dr. Patrick Waring ("Dr. Waring") from March 17, 2016 to March 17, 2022.

On October 1, 2021, Mr. Shubert, through his attorney, received a Form 1002,[2] noting that his benefits were modified from the TTD model to a supplemental earnings benefit ("SEB") model. Additionally, he received a letter from CorVel explaining that the change in benefit classification occurred because he reached a maximum medical improvement and was given work restrictions. However, there was no reduction in the benefit rate. Thereafter, Mr. Shubert's attorney faxed a letter to CorVel to acknowledge receipt of the Form 1002, noting his disagreement of the change from TTD to SEB and the assertion that a $15 per hour earning capacity has been established. Mr. Shubert filed a Form 1008-Disputed Claim for Compensation with the Office of Workers' Compensation ("OWC").

On June 17, 2022, Mr. Shubert received another Form 1002 from CorVel indicating that his benefits had been reduced at a rate of $448.07 per week. Mr. Shubert moved to amend his Form 1008. Thereafter, Mr. Shubert filed an amended Form 1008.

A one-day trial was held on September 22, 2022. The parties stipulated the following:

---

[1] La. R.S. 23:1221 provides in relevant part "[f] or any injury producing temporary total disability of an employee to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience, sixty-six and two-thirds percent of wages during the period of such disability."

[2] The Form 1002 is a "Notice of payment modification, suspension, termination or controversion of compensation or medical benefits."

1. That the Average Weekly Wage for the claim is $1,157.70.

2. That the City of New Orleans paid temporary total disability (TTD) to Mark Shubert at the rate of $630.00 per week for the period from July 13, 2015 to October 1, 2021.

3. That the City of New Orleans paid supplemental earnings benefits (SEB) to Mark Shubert at the rate of $630.00 per week for the period from October 1, 2021 to June 17, 2022.

4. That the City of New Orleans paid supplemental earnings benefits (SEB) to Mark Shubert at the rate of $448.07 per week beginning June 17, 2022.

5. That Elizabeth Wheeler is an expert in the field of vocational rehabilitation.

Subsequent to trial, the WCJ took the matter under advisement and ordered the parties to submit a post-trial memoranda by October 24, 2022. On March 13, 2023, the WCJ issued the following judgment:

**IT IS HEREBY ORDERED, ADJUDED and DECREED** that defendants. The City of New Orleans, improperly changed claimant, Mark Shubert's benefits from Temporary Total Disability (TTD) to Supplemental Earnings Benefits (SEB) on October 1, 2021.

**IT IS FURTHER ORDERED, ADJUDGED and DECREED** that the defendants. The City of New Orleans, improperly reduced the Supplemental Earnings Benefits (SEB) on June 17, 2022 of claimant, Mark Shubert.

**IT IS FURTHER ORDERED, ADJUDGED and DECREED** that the defendants, the City of New Orleans, were arbitrary and capricious in its reduction of claimant, Mark Shubert's benefits from Temporary Total Disability (TTD) to Supplemental Earnings Benefits (SEB) and the reduction of the Supplemental Earnings Benefits (SEB).

**IT IS ORDERED, ADJUDGED and DECREED** that claimant, Mark Shubert, is entitled to penalties in the amount of $2,000.00 and attorney's fees in the amount of $4,000.00 for the arbitrary and capricious behavior of the defendants, The City of New Orleans, in its reduction of Mark Shubert's benefits from Temporary Total Disability (TTD) to Supplemental Earnings Benefits (SEB) and the reduction of the Supplemental Earnings Benefits (SEB).

On March 21, 2023, Mr. Shubert filed a motion to amend judgment and/or a motion for new trial. A hearing was held on April 13, 2023, and the parties consented to the amendment of the March 13, 2023 judgment.  On April 17, 2023,[3] the WCJ signed the consent judgment that amended the March 13, 2023 to reflect:

> **IT IS ORDERED ADJUDGED AND DECREED** that there be judgment herein in favor of Mark Shubert and against The City of New Orleans awarding supplemental earnings benefits from June 17, 2022 at zero earning capacity in the amount of $630 per week, with credit for all compensation paid from that date.

The City's appeal follows.

## STANDARD OF REVIEW

"In workers' compensation cases, appellate courts apply the manifest error, or clearly wrong, standard of review to factual findings by the Office of Workers' Compensation." *Lentz v. City of New Orleans, Police Dep't*, 2022-0500, p. 4 (La. App. 4 Cir. 12/15/22), 353 So.3d 1060, 1064 (citing *Dean v. Southmark Constr.*, 2003-1051, p. 7 (La. 7/6/04), 879 So. 2d 112, 117). Under the manifest error standard, an appellate court may reverse a trial court's factual findings only if it determines that there is no reasonable factual basis for the trial court's finding and the record demonstrates that the finding is clearly wrong. *Matthews v. Big Easy Janitorial*, L.L.C., 2022-0164, p. 5 (La. App. 4 Cir. 8/10/22), 346 So.3d 325, 331 (quoting *Stobart v. State through Dep't of Transp. and Dev.*, 617 So.2d 880, 882 (La. 1993)). "This standard of review acknowledges that the trial courts are more appropriately equipped to weigh the credibility of live witnesses and upholds the unique functions of the trial and appellate courts." *Matthews*, 2022-0164, p. 6, 346 So.3d at 331 (citing *Stobart*, 617 So.2d at 883).

---

[3] In agreeing to a consent judgment regarding the amendment of the March 13, 2023 judgment, the City maintained that the judgment is contrary to the law and reserved its rights.

## DISCUSSION

The City assigns seven errors for review,[4] which we summarize as follows:

1. The trial court erred in finding that the City improperly changed Mr. Shubert's benefits from TTD to SEB, while also ordering the City to pay past SEB to Mr. Shubert.

2. The trial court erred in finding that the City improperly reduced Mr. Shubert's SEB based on jobs identified through vocational rehabilitation when six jobs were available and approved by the treating physician.

3. The trial court erred in awarding Mr. Shubert penalties and attorney's fees.

### *Modification of TTD Benefits*

The City argues that the WCJ erred in finding that it improperly modified Mr. Shubert's benefits from TTD to SEB. The City contends that no evidence supported the WCJ's finding that Mr. Shubert was totally disabled from all work after March 25, 2019.

La. R.S. 23:1221(1)(d) provides that TTD benefits "shall cease when the physical condition of the employee has resolved itself to the point that a reasonably reliable determination of the extent of disability of the employee may be made and

---

[4] The City's assignments of error are: 1. The trial court erred in finding the City improperly changed indemnity benefits of Mr. Shubert from TTD benefits to SEB on October 1, 2021; 2) The trial court erred in finding that Mr. Shubert's SEB was improperly reduced on June 17, 2022 when six jobs were identified by vocational rehabilitation as appropriate for Mr. Shubert; 3) The trial court erred and was inherently contradictory in finding the change from TTD to SEB was in error, and then, contradicting itself, finding that Mr. Shubert was entitled to SEB retroactive to June 17, 2022; 4) The trial court erred in finding that the vocational rehabilitation counselor did not prove to the court's satisfaction that she had an in depth conversation with the treating physician to get an understanding of the accommodations needed for Mr. Shubert; 5) The trial court erred in awarding additional SEB for the period from June 17, 2022 through trial after six (6) jobs were identified as appropriate for Mr. Shubert to work, were approved by the treating physician for Mr. Shubert, and were available for Mr. Shubert to apply for work; 6) The trial court erred in awarding penalties and attorney's fees to Mr. Shubert for the arbitrary and capricious handling of the claim in changing his benefits from TTD to SEB and reducing his SEB for his wage earning capacity established by vocational rehabilitation; and 7) The trial court erred in finding that the adjuster erred in using the lowest paying job identified as appropriate for Mr. Shubert to work in the vocational rehabilitation counseling process that was approved for Mr. Shubert to work by the treating physician.

5

the employee's physical condition has improved to the point that continued, regular treatment by a physician is not required."

Moreover, La. R.S. 23:1226(A) provides:

When an employee has suffered an injury covered by this Chapter which precludes the employee from earning wages equal to wages earned prior to the injury, the employee shall be entitled to prompt rehabilitation services. Vocational rehabilitation services shall be provided by a licensed professional vocational rehabilitation counselor, and all such services provided shall be compliant with the Code of Professional Ethics for Licensed Rehabilitation Counselors as established by R.S. 37:3441 et seq.

Here, Mr. Shubert worked with two vocational counselors, Elizabeth Wheeler ("Ms. Wheeler") being the most recent. The City argues that Mr. Shubert's benefits were properly modified from TTD to SEB because there was no evidence to support a finding that Mr. Shubert was totally disabled from working. To the contrary, on April 1, 2019, Dr. Waring found that Mr. Shubert reached maximum medical improvement and may be capable of sedentary duty work. Dr. Waring specified that "Mr. Shubert has permanent impairment of function that disables him from return [sic] to work as a fireman." Dr. Waring also noted that sedentary duty consisted of the ability to lift a maximum of ten pounds, walking and standing were only required occasionally, avoiding repetitive stooping or bending, and avoiding sitting or standing for prolonged periods of twenty minutes plus or minus fifteen minutes.

On February 21, 2021, Ms. Wheeler identified four potential jobs for Mr. Shubert: 1) Waste Pro customer service representative; 2) City of Mandeville dispatcher; 3) Furniture Mart retail associate; and 4) St. Tammany Health System telecom operator. Dr. Waring approved the Waste Pro customer service representative position with accommodations only and the City of Mandeville dispatcher position. At the September 9, 2022 trial, Mr. Shubert testified that he

applied for the Waste Pro position, however, he did not apply to the City of Mandeville position because he could not locate the listing on the websites provided.

According to the vocational rehabilitation records, Ms. Wheeler was not able to get a good sampling of higher paying jobs that were sedentary in nature to send to Dr. Waring for review. Thereafter, she was able to send four jobs: 1) Jones Physical Therapy client care coordinator; 2) Goodbee Plumbing, Inc. dispatch; 3) Carmax customer specialist; and 4) Education Specialty Publishing customer service representative. Dr. Waring approved the jobs, noting "only if accommodations are allowed." Mr. Shubert testified at trial that he applied to the jobs and did not hear back from the companies. Ms. Wheeler testified that based on Mr. Shubert's previous work experience there was no reason that she could think of to conclude that Mr. Shubert would not be able to find a job.

The record is void of any evidence of Ms. Wheeler following up with potential employers to ascertain whether they were willing to accommodate Mr. Shubert's limitations. Moreover, besides the July 5, 2019 notice of free computer classes offered at a public library, the record is void of any additional training offered to Mr. Shubert. According to the October 6, 2021 letter from CorVel to Mr. Shubert's counsel, vocational services would cease, noting that "no further services are needed." Moreover, the record reveals that Mr. Shubert was still treating regularly with Dr. Waring prior to the conversion of benefits on October 21, 2021. "Without a change in medical condition or identification of jobs available which claimant could perform, an employer or workers' compensation carrier has no basis upon which to change a workers' compensation claimant's classification from TTD benefits to SEBs." *Harris v. City of Bastrop*, 49,534, p. 8 (La. App. 2 Cir. 1/14/15), 161 So.3d 948, 954 (citing *Marks v. 84 Lumber Co.*, 2006-358, p. 9 (La. App. 3 Cir.

7

9/27/06), 939 So.2d 723); *see also Lentz*, 2022-0500, pp.6-8, 353 So.3d at 1065-66 (holding that the WCJ's finding that the City improperly modified claimant's benefit was not manifestly erroneous in light of the claimant still treating, the vocational counselor failing to follow-up with potential employers to confirm willingness to accommodate claimant, and ceasing vocational services after six jobs were identified and approved by physician).

We note that while the benefits were prematurely converted from TTD to SEB, the benefit amount remained the same. The March 13, 2023 judgment specifies that the City improperly reduced TTD to SEB, however, the WCJ did not award TTD to Mr. Shubert. Moreover, the WCJ's reasons for judgment clarify its ruling, specifically by focusing extensively on the modification of SEB.[5] The City has not shown how the WCJ's ruling had any substantial effect on the outcome of the case. Accordingly, we find no merit in this assignment of error.

### Reduction of SEB Benefits

Next, the City argues that Mr. Shubert's SEB was properly reduced based on the wage-earning capacity established by vocational rehabilitation through the identification of suitable jobs.

"The purpose of SEBs is to provide compensation to an injured employee for [his] lost wage-earning capacity." *Hebert v. Fresh Mkt., Inc.*, 2019-0412, p. 14 (La.

---

[5] This Court reviews judgments, not reasons for judgment. But, an appellate court can use reasons for judgment to gain insight into the district court's judgment. *Bernstein v. Bernstein*, 2019-1106, p. 13 (La. App. 4 Cir. 2/10/21), 313 So.3d 413, 423 (quoting *Wooley v. Lucksinger*, 2009-0571, p. 78 (La. 4/1/11), 61 So.3d 507, 572). "'[R]easons for judgment are merely an explication of the trial court's determinations. They do not alter, amend, or affect the final judgment being appealed....'" *Lombard v. Nobre*, 2023-0746, p. 11 (La. App. 4 Cir. 6/18/24), 398 So.3d 1, n.5 (quoting *Wooley*, 2009-0571, pp. 77-78, 61 So.3d at 572).

App. 4 Cir. 9/18/19), 280 So.3d 756, 768 (citing *Doane v. Omni Royal Orleans Hotel*, 2016-0144, p. 5 (La. App. 4 Cir. 10/26/16), 204 So.3d 615, 618). A claimant is eligible for SEBs, if due to a work-related injury, he is unable to earn at least ninety percent of his pre-injury wages. *Id.*

The claimant first bears the burden of proving by a preponderance of the evidence that the injury resulted in his inability to earn that amount under the facts and circumstances of the individual case. *Baker v. Harrah's*, 2015-0229, p. 25 (La. App. 4 Cir. 3/9/16), 190 So.3d 379, 396 (citing *Poissenot v. St. Bernard Parish Sheriff's Office*, 2009-2793, p. 5 (La. 1/9/11), 56 So.3d 170, 174). In determining whether a claimant has made a *prima facie* case of entitlement to SEBs, the workers' compensation court should consider all of the factors that may bear on a claimant's ability to earn a wage. *Juarez v. AJ Lazo Constr., LLC*, 2022-575, p. 10 (La. App. 5 Cir. 9/20/23), 370 So.3d 1280, 1289-90 (citing *Poissenot*, 2009-2793, p. 5, 56 So.3d at 174).

Louisiana Revised Statutes 23:1221(3)(c)(i) sets forth the requirement that an employer must prove a job is available in order to validate reducing benefits. It provides in relevant part:

> [I]f the employee is not engaged in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, or is earning wages less than the employee is able to earn, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sum the employee would have earned in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, which he was physically able to perform, and (1) which he was offered or tendered by the employer or any other employer, or (2) which is proven available to the employee in the employee's or employer's community or reasonable geographic region.

The City argues that under the standard of *Banks v. Indus. Roofing & Sheet Metal Works, Inc.*, an actual job placement is not required, but the employer must show:

(1) the existence of a suitable job within claimant's physical capabilities and within claimant's or the employer's community or reasonable geographic region;

(2) the amount of wages that an employee with claimant's experience and training can be expected to earn in that job; and

(3) an actual position available for that particular job at the time that the claimant received notification of the job's existence.

96-2840, pp. 10-11 (La. 7/1/97), 696 So.2d 551, 557.

Here, as previously mentioned, Ms. Wheeler identified six potential jobs for Mr. Shubert that were approved by Dr. Waring. Five of those jobs were approved solely on the basis of accommodations being allowed. However, there is no evidence of Ms. Wheeler confirming accommodations with potential employers; therefore, there is no information as to whether the jobs were within Mr. Shubert's physical capabilities. Mr. Shubert also kept a detailed log of all the jobs for which he submitted applications. As stated earlier, Mr. Shubert testified that he could not locate the City of Mandeville position on the provided websites. Mr. Shubert attested that he applied for CarMax's customer specialist, Goodbee Plumbing, Inc.'s dispatch, and Jones Physical Therapy's client care coordinator positions. Additionally, Mr. Shubert testified that he applied for the customer service representative position with the Education Specialty Publishing online and left a telephone message with the company, and no one followed up from the company. Moreover, despite Ms. Wheeler testifying that the potential jobs were available, there was no corroborating evidence of the jobs actually being available when Mr. Shubert was notified about them.

10

Thus, in light of the foregoing, we do not find that the WCJ erred in finding that the City improperly reduced Mr. Shubert's SEB and that he is entitled to have his benefits reinstated back to the date of modification at a rate of six hundred thirty dollars ($630.00) per week at a zero-earning capacity.

***Penalties and Attorney's Fees***

Lastly, the City asserts that the workers' compensation court erred in finding the City was arbitrary and capricious in the handling of Mr. Shubert's claim and awarding a penalty and attorney fees to Mr. Shubert.

La. R.S. 23:1201(I) provides in relevant part:

> Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of a penalty not to exceed eight thousand dollars and a reasonable attorney fee for the prosecution and collection of such claims.

"The decision to impose penalties and fees is essentially a factual issue subject to the manifest error-clearly wrong standard of review." *Lentz*, 2022-0500, p. 9, 353 So.3d at 1067 (quoting *Baker*, 2015-0229, p. 30, 190 So.3d at 398).

The *Lentz* court relied on the Louisiana Supreme Court's decision in *Iberia Medical Center v. Ward*, 2009-2705, pp.18-19 (La. 11/30/10), 53 So.3d 421, 433-34 for an explanation of awards of penalties and attorney's fees in workers' compensation cases, providing that they:

> [A]re essentially penal in nature, being imposed to discourage indifference and undesirable conduct by employers and insurers. *Williams v. Rush Masonry, Inc.*, 1998-2271 (La. 6/29/99), 737 So.2d 41, 46. Although the Worker's Compensation Act is to be liberally construed in regard to benefits, penal statutes are to be strictly construed. *Id.* "Arbitrary and capricious behavior consists of willful and unreasoning action, without consideration and regard for facts and circumstances presented, or of seemingly unfounded motivation." *Brown v. Texas-LA Cartage, Inc.*, 1998-1063, p. 8-9 (La. 12/1/98), 721 So.2d 885, 890.

*Lentz*, 2022-0500, p. 9, 353 So.3d at 1067 (internal citation omitted).

In determining whether an employer acted arbitrarily and capriciously in a workers' compensation matter:

> Courts must evaluate "whether the employer or his insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed." *Brown v. Texas-LA Cartage, Inc.*, 98-1063, p. 9 (La. 12/1/98), 721 So. 2d 885, 890. Employers must have "some valid reason or evidence upon which to base his denial of benefits." *Id.* Stated another way, employers must possess an "articulable and objective reason to deny benefits at the time it took action." *Authement* [*v. Shappert Eng'g*], [20]02-1631, p. 11, 840 So. 2d at 1188 (citing *Williams v. Rush Masonry, Inc.*, 98-2271 (La. 6/29/99), 737 So. 2d 41, 46).

*Id.*, 2022-0500, pp. 9-10, 353 So.3d at 1067 (quoting *Matthews*, 2022-0164, pp. 18-19, 346 So.3d at 337).

In the instant matter, the City argues that the workers' compensation court erred in finding that claims adjuster, Robert Drake ("Mr. Drake") should have used every job identified in the labor market survey to establish Mr. Shubert's wage-earning capacity because that entails jobs that were not appropriate for Mr. Shubert according to Dr. Waring, and jobs that were not available for Mr. Shubert to apply for work. Mr. Drake testified in a deposition that he based the decision to modify Mr. Shubert's benefits on an assumed earning capacity. He used the City of Mandeville's dispatch position that paid $12.14 per hour to determine the SEB rate. Mr. Drake also testified that he looked at jobs that were approved by Dr. Waring and still available at that current time. However, Mr. Shubert's log of jobs for which he applied to were included in the vocational record. Mr. Shubert notated in his log that the City of Mandeville's dispatch position could not be located. Mr. Drake testified that he did not review the entire vocational rehabilitation file. The record provides

that Mr. Shubert submitted a notice of disagreement to the Form 1002. Mr. Drake testified that he did not conduct further review of the file after receiving Mr. Shubert's notice of disagreement.

In light of the lack information regarding the availability of potential jobs or further review of Mr. Shubert's file, there was no valid reason to reduce Mr. Shubert's SEB rate. Therefore, we cannot conclude that he WCJ erred in awarding attorney's fees and penalties to Mr. Shubert.

*Answer to Appeal*

Mr. Shubert answered this appeal, seeking an additional two thousand five hundred dollars ($2,500.00) in attorney's fees to cover the cost of his counsel's work in opposing the City's appeal. "It is well-established that '[a] workers' compensation claimant who timely answers the appeal is entitled to increased attorney fees and penalties to reflect additional time incurred in defending against employer/insurer's unsuccessful appeal, especially where the claimant makes a clear showing of the employer's arbitrary and capricious refusal to pay the claim.'" *Lentz*, 2022-0500, p. 10, 353 So.3d at 1067 (quoting *Hucke v. New Orleans Glass*, 2003-1709, pp. 6-7 (La. App. 4 Cir. 2/11/04), 868 So.2d 166, 170-71). In light of determining that the City is not owed any relief, we grant Mr. Shubert's request for an additional two thousand five hundred dollars ($2,500.00) in attorney's fees for defending this appeal.

## CONCLUSION

For the foregoing reasons, we affirm the March 13, 2023 judgment and we award Mr. Shubert an additional two thousand five hundred dollars ($2,500.00) in attorney's fees to cover the cost of defending this appeal.

**AFFIRMED**