PITMAN, J.
11 Defendant Willis-Knighton Medical Center[1] (“Willis-Knighton”) appeals the judgment of the Workers’ Compensation Judge (“WCJ”) finding that Claimant Tangela Mason is permanently and totally disabled. For the following reasons, we reverse.
FACTS
On June 11, 2000, Ms. Mason, a certified nursing assistant employed by Willis-Knighton, injured her back at work while attending to a patient. Ms. Mason’s weekly wage at the time of the accident was $339.79, and her indemnity rate was $226.53. Willis-Knighton paid indemnity benefits for 520 • weeks and terminated payment as of December 7, 2010.
On August 23, 2011, Ms. Mason filed a disputed claim for compensation seeking a determination from the Office of Workers’ Compensation that she is permanently and totally disabled pursuant to La. R.S. 23:1221(2).
On September 2, 2011, Willis-Knighton filed an answer and denied that Ms. Mason was entitled to any additional workers’ compensation benefits or medical expense reimbursement beyond what had already been paid or was being paid at the time of filing the answer. Willis-Knighton alleged that Ms. Mason is not permanently and totally disabled as defined by La. R.S. 23:1221(2).[2]
DA trial on the merits was held on October 1, 2013. Ms. Mason testified that she worked at Willis-Knighton as a certified nursing assistant beginning in 1990 and that she never had back pain or depression prior to the accident. She stated that, on June 11, 2000, she ruptured a disc in her back while “pulling a patient up in the bed.” She explained that she initially treated the injury with physical therapy *1262 and then subsequently had three surgeries. All three surgeries were unsuccessful and she was able to work for a few months after each surgery performing only light duty. She further stated that she stopped working following her third surgery and was approved for social security disability in 2002.
Ms. Mason detailed her history of treatment for pain and that she has seen several doctors for pain management, including Dr. Sudar Tanga and Dr. Randall Brewer. She stated that, on the advice of Dr. Brewer, she went to the Mayo Clinic for approximately a month, continuing all of her medications while there. She testified that she stopped seeing Dr. Tanga because he wanted to put a morphine pump in her back and she stopped seeing Dr. Brewer because he wanted to prescribe her Oxycontin; she did not want to take either of those medications. In the fall of 2012, she went back to Dr. Brewer because he agreed to perform a spinal cord stimulator procedure. However, she did not undergo the procedure because she did not want to complete all the steps for approval, including seeing a psychiatrist. She stated that Dr. Brewer recommended that she participate in a program at Brentwood designed to assist her in weaning off all of the medications she [3was taking, but she declined to participate in the program because she needed the medications for pain.
Ms, Mason stated that, at the time of trial, she was still undergoing pain management through her primary doctor, Dr. Wendell Wall. She testified that she is unable to drive per doctors’ orders because of the medication she takes, i.e., morphine, Lortab, Lyrica, Celebrex, Soma, Cymbalta, Ambien, Triazidone, Nexium, Zofran and Creon. She described her side effects from the medication as, “My head always spinning, having these mood swings, my stomach hurting. Drowsy, lack of energy. Depression, medicine cause depression.” She further stated that she has pancreati-tis, fibromyalgia as a result of the accident and surgeries and stomach problems as a result of her medications. She acknowledged that she takes too many medications and narcotics and that, beginning in February 2013, she has decreased the amount of narcotics she takes.
Ms. Mason also testified that she has not worked since she began receiving social security disability. She described her daily schedule as, “I get up. I have to take my medicine because I hurt bad when I first get up. And the medicine make me sleepy so I go back to sleep. That’s most of my daily routine.” On a good day she gets out of the house for a few hours and on bad days she stays in bed propped up on pillows. On cross-examination, counsel for Willis-Knighton produced photos of Ms. Mason from her Facebook account, wearing high heels and carrying a purse while shopping [4in 2012.[3] She explained that she shops and eats at The Boardwalk[4] “fairly often” and goes to Walmart to shop, but feels she cannot work because of her back symptoms.
In addition to her testimony, Ms. Mason introduced into evidence vocational rehabilitation reports, a letter from Dr. Donald Smith (neurosurgeon), correspondence from Dr. Wall, a social security offset form and a copy of her last temporary total disability check.
In a vocational rehabilitation progress report dated October 8, 2008, her counsel- or noted that “[r]esults of [psychometric] *1263 testing indicate that [Ms. Mason] is not a good candidate for these services as she was reported to be incapable of working on a functional basis due to the effects of oversedation as a result of probable medication abuse.”
In a letter dated February 13, 2003, Dr. Smith stated that he does “not believe [other doctors] will be successful in returning this patient to any significant work activities.”
In a letter dated February 26, 2013, Dr. Wall stated, “This letter is to confirm that I am continuing the care of Tangela Mason. She is totally disabled and is unable to work.”
Willis-Knighton introduced into evidence the deposition of Dr. Smith; the medicals records of Drs. Tanga, Wall, James Pinkston, Brewer and Smith; correspondence of Nurse Kristy Coleman to Dr. Wall; a form from Dr. Brewer; and Facebook photos.
|fiIn his deposition, Dr. Smith testified that he is a neurosurgeon and was one of Ms. Mason’s physicians after her accident. He stated that he performed a lumbar disc excision on Ms. Mason in 2000 or 2001. He noted that he performed a physical examination of Ms. Mason in 2007 and that his impression of Ms. Mason after this examination was that he
d[id] not believe that any additional invasive procedures of any type will result in significant improvement in the patient’s level of complaints and d[id] not believe that any of these procedures will result in a return of the patient to any significant level of productive activity.... On a purely physical basis, [he felt] that the patient should be able to perform a wide variety of at least light work activities.
Dr. Smith further noted that Ms. Mason “did not really show a lot of motivation to return to work.” He also noted that, based on her functional capacity testing results, she qualified for sedentary work. He testified that he again examined Ms. Mason in 2009 and reviewed her performance in a functional capacity evaluation. He noted that she did not complete the evaluation because she was in pain, but that he was able to assess that “on a physical basis that the patient should be capable of performing a variety of light work activities.” Dr. Smith also testified that he saw Ms. Mason again in November 2011 and that he believed she could perform light work duties, but that “no return to productive activity will be successful until Ms. Mason has obtained some resolution of her litigation matters.” He reiterated that Ms. Mason was not totally disabled from a physical standpoint. He emphasized that, although he believed she was physically able to perform sedentary work or perhaps light work, “the realistic outlook for returning to | fiany formal work activity is very remote, very poor,” noting her excessive use of narcotics and her poor motivation.
Dr. Tanga’s medical records detail his treatment of Ms. Mason’s pain management beginning in October 2004 and ending in November 2006. In his first consultation with Ms. Mason, he noted that she does not work because of pain and he suggested that she try several different narcotics to manage her pain. After several follow-up appointments, Dr. Tanga noted in March 2005 that Ms. Mason had “tried pretty much every pain medication that is available.” He suggested that Ms. Mason be weaned off all narcotics before beginning an intrathecal morphine trial. His reports suggest that this course of treatment was not pursued and that Ms. Mason continued to take several medications, including Lortab, Lyriea, Celebrex and Ambien, to help control her pain.
*1264 Dr. Wall’s medical records document his treatment of Ms. Mason from 2007 to 2013. The most recent records, dated July 9, 2013, state that Ms. Mason has degenerative disc disease of the spine, chronic pain, gastritis, chronic pancreatitis, insomnia, depression and possible fibromyalgia. These records also detail Ms. Mason’s history of medication. The most recent records of her medications, dated August 5, 2013, state that she takes Creon, Lyrica, Ambien, Morphine, Zofron, Soma, Cymbal-ta, Combivent, Celebrex, Nexium, Phener-gan, Norco, Relistor, Vitoz, Trazadone, Li-doderm and Abilify.
In a report dated November 14, 2012, Dr. James Pinkston, a clinical psychologist, detailed his psychological evaluation of Ms. Mason, which he |7performed to assist with her pain management “treatment planning including the consideration of her appropriateness for various interventions including physical therapy, narcotic pain medication, nerve root block injections, implantable medication pumps, and spinal cord stimulation.” Dr. Pink-ston noted that:
Ms. Mason has a long history of chronic pain treatment without success including three back surgeries, various therapies, and many medications. Multiple providers have noted a significant psychological overlay to the perception and maintenance of her pain.
[[Image here]]
Based on her history, presentation, and standardized psychological assessment, and from a psychological perspective, the examinee is inappropriate for spinal cord stimulator placement or other surgical procedures as a treatment for her chronic pain.
[[Image here]]
In addition, the examinee’s history, pres- . entation, and current assessment results suggest sedation, medication habituation, and a propensity towards dependence on her pain medications. Given her misperception and significant exaggeration of her chronic pain, it is likely that she will not receive appropriate benefit from narcotic pain medications.
Dr. Brewer’s medical records detail his treatment of Ms. Mason regarding her pain management. His records from October 30, 2012, note that his treatment plan was to attempt to wean Ms. Mason off of her medications after undergoing a spinal cord stimulator trial. Dr. Brewer stated that his alternative plan was to refer her to Brentwood for pain rehabilitation and detoxification. Records from February 13, 2013, note that Ms. Mason did not participate in the program at Brentwood because “she states that there is no point to go through detox if she is still needing pain meds.”
|sIn a letter dated January 18, 2013, Kristy Coleman, a nurse case manager assigned to Ms. Mason’s workers’ compensation ease, wrote to Dr. Wall concerning the rehabilitation conference they attended. Nurse Coleman noted Dr. Pinkston’s finding that Ms. Mason is not a candidate for a spinal cord stimulator and that Dr. Wall disagreed with Dr. Pinkston. She also noted that Dr. Wall requested that Dr. Brewer assume management of Ms. Mason’s medications, but that he believed it would “be difficult as the work [sic] comp carrier is only willing to pay for the lumbar pain and she suffers from chronic pancreatitis” and it would “be difficult to differentiate between the two conditions.” She also discussed Dr. Brewer’s suggestion that Ms. Mason undergo treatment in Brentwood’s detox/pain management program. She wrote that Dr. Wall stated that “her lumbar pain appears stable and her pancreatitis and IBS are more troublesome for the patient.”
*1265 On November 25, 2018, the WCJ filed a judgment in favor of Ms. Mason, finding that she proved by clear and convincing evidence that she is permanently and totally disabled.[5] The WCJ also filed detailed reasons for judgment.
Willis-Knighton appeals.

DISCUSSION

Willis-Knighton argues that the WCJ committed legal and manifest error by concluding that Ms. Mason is permanently and totally disabled. 9Willis-Knighton alleges that Ms. Mason has not proven by clear and convincing evidence that she is physically unable to engage in any employment. It suggests that it is mere speculation that Ms. Mason is unable to work because of her back symptoms, as opposed to the other numerous ailments for which Dr. Wall was treating her.
Ms. Mason argues that Willis-Knighton does not point to any legal error and does not establish that the WCJ’s factual findings were manifestly erroneous or clearly wrong. She contends that the WCJ’s judgment was reasonable and supported by the evidence.
The applicable statute pertaining to an employee’s claim for permanent and total disability is La. R.S. 28:1221(2), which states, in pertinent part:
(a)For any injury producing permanent total disability of an employee to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, and experience, sixty-six and two-thirds percent of wages during the period of such disability.
(b) For purposes of Subparagraph (2)(a) of this Paragraph, compensation for permanent total disability shall not be awarded if the employee is engaged in any employment or self-employment regardless of the nature or character of the employment or self-employment including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain.
(c) For purposes of Subparagraph (2)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subpar-agraph (2)(b) of this Paragraph, compensation for permanent total disability shall be awarded only if the 11flemployee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including, but not limited to, any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.
Thus, a workers’ compensation claimant seeking permanent total disability benefits bears the burden of proving by clear and convincing evidence that he or she is physically unable to engage in any employment. La. R.S. 23:1221(2)(c); see also, Morgan v. Glazers Wholesale Drug *1266 Co., 46,692 (La.App.2d Cir.11/2/11), 79 So.3d 417. Whether the claimant has carried his or her burden of proof and whether testimony is credible are questions of fact to be determined by the WCJ. Id., citing Harris v. Casino Magic, 38,137 (La.App.2d Cir.1/28/04), 865 So.2d 301, writ denied, 04-0502 (La.4/8/04), 870 So.2d 275.
Factual findings in workers’ compensation cases are subject to the manifest error rule. Buxton v. Iowa Police Dep’t, 09-0520 (La.10/20/09), 23 So.3d 275, citing Winford v. Conerly Corp., 04-1278 (La.3/11/05), 897 So.2d 560; Morgan v. Glazers Wholesale Drug Co., supra, citing Dean v. Southmark Const., 03-1051 (La.7/6/04), 879 So.2d 112. Under the manifest error rule, the reviewing court does not decide whether the factfinder was right or wrong, but only whether its findings are reasonable. Buxton v. Iowa Police Dep’t, supra, citing Stobart v. State through Dep’t of Transp. & Dev., 617 So.2d 880 (La.1993); Morgan v. Glazers Wholesale Drug Co., supra.
|nEvidence that an employee could not return to any gainful employment without suffering substantial pain is not sufficient to support an award of permanent total disability benefits. Id., citing Bank of Winnfield & Trust Co. v. Collins, 31,473 (La.App.2d Cir.2/24/99), 736 So.2d 263.
In the case sub judice, Ms. Mason attempted to prove by clear and convincing evidence that she is permanently and totally disabled. The WCJ made the determination that Ms. Mason is permanently and totally disabled, noting her chronic back and leg pain, her significant amounts of medication, her lethargic manner and her unsuccessful attempts at rehabilitation. Upon review of the record, we find that the WCJ’s findings are not reasonable and are manifestly erroneous because Ms. Mason has not met her burden of proof.
Ms. Mason’s testimony and the medical records of her treating physicians detail her struggle with pain management following her three back surgeries. Ms. Mason stated that she was unable to work because of her back pain and because of the side effects of her medication, i.e., fatigue, dizziness, upset stomach and depression.
The only testimony or documentation introduced to prove that Ms. Mason is physically unable to work is Dr. Wall’s letter stating, “[s]he is totally disabled and is unable to work” without any explanation for his finding. Although Ms. Mason introduced into evidence the records of several of her doctors, none of these records support her argument that she is physically unable to engage in any employment. The doctors’ records repeatedly highlight Ms. Mason’s dependence on pain medication, notably, | iaher dependence on narcotics. Dr. Tanga noted that Ms. Mason does not work because of pain. Although the vocational rehabilitation counselor stated that Ms. Mason was not a good candidate for vocational rehabilitation, the counselor noted that this was because of Ms. Mason’s “probable medication abuse.” Dr. Smith wrote in a 2003 letter that he did “not believe [other doctors] will be successful in returning this patient to any significant work activities”; but, in his deposition, he explained this was because of her lack of motivation and her excessive use of narcotics — not her physical abilities or inabilities. He opined that Ms. Mason is physically able to work at least on a sedentary basis or perhaps light work.
We find that Ms. Mason has not proven by clear and convincing evidence that she is physically unable to engage in any employment and that, therefore, the WCJ erred in finding that she met her burden of proof. Her complaints that pain and the side effects of pain medication are *1267 preventing her from working are insufficient to support her claim of permanent and total disability. See Morgan v. Glazers Wholesale Drug Co., supra; Bank of Winnfield & Trust Co. v. Collins, supra. The evidence presented suggests that Ms. Mason is physically able to engage in employment, including sedentary work or perhaps light work. The evidence also suggests that Ms. Mason abuses pain medication, which has prevented her return to employment.
Accordingly, this assignment of error has merit.[6]

¡^CONCLUSION

For the foregoing reasons, we reverse the judgment of the Workers’ Compensation Judge against Defendant Willis-Knighton Medical Center and in favor of Claimant Tangela Mason finding her to be permanently and totally disabled. Costs of appeal are assessed to Claimant Tange-la Mason.
REVERSED.

. The original complaint refers to Defendant as "Willis-Knighton Medical Center”; however, subsequent filings refer to Defendant as "Willis-Knighton Health System.”

. In the alternative, Willis-Knighton asserted entitlement to Social Security offset if the WCJ ruled that Ms. Mason is permanently and totally disabled.

. Ms. Mason captioned one of the photos "Ready to tke [sic ] theses [sic ] shoes off [sic ] they r [sic ] killing my back.”

. The Boardwalk is an outdoor outlet center in Bossier City with retail stores, restaurants and a movie theater.

. The WCJ ordered Willis-Knighton to pay Ms. Mason permanent and total disability benefits of $226.54 per week retroactive to November 23, 2010, and continuing unless modified by the WCJ, subject to reverse Social Security offset of $520.80 per month. The WCJ also ordered Willis-Knighton to pay judicial interest on each payment from the date it came due, together with all costs of the proceedings.

. We note that Ms. Mason has received 520 weeks of workers’ compensation benefits. Accordingly, she is ineligible to receive supplemental earnings benefits pursuant to La. R.S. 23:122l(3)(d) and 23:1223(B).