STEWART, J.
pThe claimant, Donna Sue Royals (“Royals”), is appealing a judgment of the Office of Workers’ Compensation that rejected her claim for permanent total disability (“PTD”) benefits, as well as penalties and attorney fees. For the reasons discussed in this opinion, we affirm.
FACTS
Royals was hired by the Town of Rich-wood (“Richwood”) to work at Richwood High School as a resource officer during the 2002-2003 school year. On September 9, 2002, Royals twisted her right knee while stepping out of her patrol car after making a perimeter check of the school. The next day, she further injured her knee in the restroom at the police station. Royals’ family doctor sent her to the hospital to obtain treatment for her injured knee.
*1078 In late November of 2002, Royals began seeing Dr. Douglas Brown, an orthopedic surgeon, who suspected that she was suffering from a torn meniscus. Dr. Brown performed arthorscopic surgery on Royals’ injured knee on December 28, 2002. Royals was released to return to work on January 13, 2003, as a dispatcher. After Royals continued to complain of pain, a total knee replacement was recommended and performed on January 14, 2005. On May 11, 2005, Dr. Brown released Royals to modified work. On August 17, 2005, Dr. Brown gave Royals a full release to return to her previous position. Royals never returned to work.
This matter has been brought before this court on two previous occasions. In Royals v. Town of Richwood, 38,738 (La.App.2d Cir.8/18/04), 880 So.2d 208, Rich-wood initially discontinued Royals’ benefits | ¡.after determining that she was not injured arising out of and during the course and scope of her employment. Royals filed a disputed claim for compensation. The Workers’ Compensation Judge (“WCJ”) found that Royals was temporarily totally disabled (“TTD”) from September 12, 2002, through October 15, 2002, and from December 28, 2002, through January 13, 2003, awarding TTD benefits in the amount of $200 per week. Royals was also awarded supplemental earnings benefits (“SEB”) from January 13, 2003, until she was released to full duty. Penalties were also imposed on Richwood. This court deleted one of the penalties but otherwise affirmed the WCJ’s judgment awarding Royals benefits with penalties and attorney fees.
Richwood subsequently paid her TTD benefits and SEB until August 17, 2005, when Dr. Brown fully released her to work. As a result, Royals filed a disputed claim for compensation, seeking reimbursement for mileage, medical expenses, and additional medical treatment. The WCJ denied Royals any further SEB, her claims for reimbursement, and claims for medical expenses. Richwood was assessed a penalty for nonpayment after receiving proof of claim. In Royals v. Town of Richwood, 42,585 (La.App.2d Cir.10/24/07), 968 So.2d 833, this court reversed the portion of the WCJ’s judgment denying Royals SEB. Again, Richwood paid her SEB until September 12, 2012, when those benefits were terminated on the grounds that the 520-week limit was reached.
|aIn the present matter before this court, the WCJ denied Royals benefits after determining that she failed to prove that she is totally and permanently disabled. In its oral reasons for judgment, the WCJ noted:
In this case, the evidence is overwhelmingly clear. It is not the injury claimant sustained on September 9, 2002, that is producing her current disability. Instead her disability is the result of a plethora of medical issues claimant currently suffers.
Royals appeals, asserting two assignments of error.
LAW AND DISCUSSION

PTD Benefits

In her first assignment of error, Royals alleges that the WCJ erred in failing to award benefits for permanent and total disability. Royals alleges that the WCJ erroneously accepted Dr. Brown’s seven-year-old deposition in the instant case. Royals further alleges that her “long list” of medical problems stems from her September 9, 2002, work-related accident. In Dr. Colvin’s deposition, he opined that “the inability to ambulate and move about and exercise contributes to the gain of weight and the gain of weight contributes to these other conditions.” Royals asserts that she did not have these medical problems before the accident, and if not for the work-related accident, her *1079 medical problems would not have developed because she would have continued to be active. She believes that evidence presented proves that she is totally and permanently disabled and that this disability was brought about by the work-related injury.
Richwood contends that the medical evidence presented does not prove that Royals’ medical problems are related to the work-related knee injury. Dr. Brown released her to her original position with Richwood, but |4she never attempted to return to any type of employment. Rich-wood believes that Royals’ history shows that she has chosen not to return to work. Royals cared for her ailing mother and continued to drive until 2011. Further, Richwood argues that Royals’ sedentary lifestyle more than likely led to her ailments.
In a workers’ compensation case, the appropriate standard of review to be applied by the appellate court to the WCJ’s finding of fact is the manifest error or clearly wrong standard. Dean v. Southmark Const., 03-1051 (La.7/6/04), 879 So.2d 112; Dunlap v. Madison Parish School Bd., 46,139 (La.App.2d Cir.4/13/11), 61 So.3d 833. Whether the claimant has carried his burden of proof and whether testimony is credible are questions of fact to be determined by the WCJ. Dunlap v. Madison Parish School Bd., supra; Harris v. Casino Magic, 38,137 (La.App.2d Cir.1/28/04), 865 So.2d 301, unit denied, 2004-0502 (La.4/8/04), 870 So.2d 275. Unless shown to be clearly wrong, the WCJ’s factual findings of work-related disability will not be disturbed where there is evidence which, upon the trier of fact’s reasonable evaluation of credibility, furnishes a reasonable, factual basis for those findings. Id. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989); Morgan v. Glazers Wholesale Drug Co., 46,692 (La.App.2d Cir.11/2/11), 79 So.3d 417. The trier of fact’s determinations as to whether the worker’s testimony is credible and whether |Rthe worker discharged the burden of proof are factual determinations, not to be disturbed upon review unless clearly wrong. Harris v. City of Bastrop, 49,534 (La.App.2d Cir.1/14/15), 161 So.3d 948; Thomas v. GM Benefits & Serv. Ctr., 48,718 (La.App.2d Cir.1/15/14), 132 So.3d 464.
An employee is entitled to worker’s compensation benefits if he receives a personal injury by accident arising out of and in the course-of his employment. La. R.S. 23:1031; McLin v. Industrial Specialty Contractors, Inc., 2002-1539 (La.7/2/03), 851 So.2d 1135; Scott v. Super 1 Foods, 45,636 (La.App. 2 Cir. 9/29/10), 48 So.3d 1133. An employment-related accident is an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration. La. R.S'. 23:1021(1). Although the workers’ compensation law is liberally construed in favor of coverage, the claimant’s burden of proving an accident is not relaxed; she must prove by a preponderance of the evidence that an accident occurred and the resulting disability is related to an on-the-job injury. McLin, supra; Hofler v. J.P. Morgan Chase Bank, N.A. 46,047 (La.App. 2 Cir. 1/26/11), 57 So.3d 1128. Proof by a preponderance of the evidence is sufficient when the evidence, taken as a whole, shows that the fact sought to be proved is more probable than not. Key v. Insur *1080 ance Company of North Amen, 605 So.2d 675 (La.App. 2 Cir.1992).
IfiThe applicable statute pertaining to an employee’s claim for permanent and total disability (“PTD”) is La. R.S. 23:1221(2), which states, in pertinent part:
(a) For any injury producing permanent total disability of an employee to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, and experience, sixty-six and two-thirds percent of wages during the period of such disability.
(b) For purposes of Subparagraph (2)(a) of this Paragraph, compensation for permanent total disability shall not be awarded if the employee is engaged in any employment or self-employment regardless of the nature or character of the employment or self-employment including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain.
(c) For purposes of Subparagraph (2)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subpar-agraph (2)(b) of this Paragraph, compensation for permanent total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including, but not limited to, any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.
A claimant seeking PTD benefits bears the burden of proving, by clear and convincing evidence, his inability to engage in any type of employment. Harris v. City of Bastrop, supra; State, DOTD v. Berry, 49,186 (La.App.2d Cir.8/13/14), 147 So.3d 270. The clear and convincing standard in a workers’ compensation case is an intermediate standard falling somewhere between the ordinary preponderance of the evidence civil standard and the |7beyond a reasonable doubt criminal standard. To prove a matter by clear and convincing evidence means to demonstrate that the existence of the disputed fact is highly probable or much more probable than its nonexistence. Hollingsworth v. Steven Garr Logging, 47,884 (La.App.2d Cir.2/27/13), 110 So.3d 1219; Young v. Physicians & Surgeons Hosp., 39,348 (La. App.2d Cir.3/2/05), 895 So.2d 723.
Following the 1983 amendments to the workers’ compensation statute, evidence that an employee could not return to any gainful employment without suffering substantial pain is no longer sufficient to support an award of permanent total disability benefits. Mason v. Willis-Knighton Med. Ctr., 49,320 (La.App.2d Cir.10/1/14), 149 So.3d 1260; Morgan v. Glazers Wholesale Drug Co., supra; Bank of Winnfield & Trust Co. v. Collins, 31,473 (La.App.2d Cir.2/24/99), 736 So.2d 263.
In the case sub judice, Dr. Brown, an orthopedic surgeon, testified in his deposition that Royals’ MRI, taken after the September 9, 2002, incident, showed that she had a tear of the posterior horn of the medial meniscus. Based on his recommendations, Dr. Brown performed arthorscopic surgery on her knee on December 28, 2002. On January 13, 2003, Royals was released to return to light-duty work as a dispatcher. Royals did not see Dr. Brown *1081 again until November 5, 2003, at which time he opined that her knee showed signs of progressive arthritis. Dr. Brown ordered an MRI at Royals’ next visit, which took place on October 6, 2004. Dr. Brown stated that the MRI showed “chronic degenerative changes in the meniscus and both medial lateral moderate arthritic changes,” and recommended a total knee ^replacement. He opined that if she had the total knee replacement, she would be able to return to all of her duties as a Richwood Police Department employee.
The total knee replacement surgery took place on January 14, 2005. Dr. Brown commented that the surgery went well. During her May 11, 2005, examination, Royals said that she was happy with the surgery. Dr. Brown informed her that she could perform modified work at that time. Specifically, Royals could be a dispatcher and she could drive. However, he didn’t think that she should be chasing criminals, but she could work in a jail facility.
At Royals’ August 17, 2005, examination, Dr. Brown fully released her to perform her original job at the Richwood Police Department. On September 7, 2005, Royals returned to Dr. Brown, after falling down and hitting her hand and her knee. Even though Dr. Brown recommended that she come back to see him after a couple of weeks, he testified that she was still released for full work. Royals did not come back to see Dr. Brown until March 15, 2006. During that visit, she informed him that she had fallen off her porch and requested that her knee be examined. Dr. Brown testified that the fall did not affect her release to full work. That was the last time Dr. Brown saw Royals.
Dr. Kurt David Olinde, a physician who specializes in adult internal medicine and cardiovascular disease, testified in his deposition that he treated Royals while he was employed at the VA hospital. He began treating her on July 17, 2007. He testified that he did not administer any treatment | sfor Royals’ knee. In a letter dated January 26, 2009, Dr. Olinde commented, regarding Royals’ disability, “no work ... the patient is totally and permanently disabled from all jobs in the economy.” Dr. Olinde confirmed in his testimony that he did not have any knowledge of a test being administered to determine functional capability of any of Royals’ ailments. He found that due to Royals’ pain and the medication he used to treat it, she was totally disabled. He authored this letter without a formal evaluation of Royals.
Dr. Olinde testified that he could distinctly remember Royals’ neuropathic pain, and that he could not confirm that this pain was caused by a work-related accident. Further, when asked if he would have any reason to agree or disagree with the surgeon who performed the knee replacement, Dr. Olinde responded that he “would do whatever the surgeon said was appropriate for the knee.”
Dr. Thomas Colvin, a family medical doctor who practices in Winnsboro, Louisiana, testified in his deposition that he began seeing Royals on July 18, 2006, when she complained of double vision. He didn’t treat her again until August 24, 2009, when she complained of an unsteady gait and of her inability to use a standard wheelchair because of joint pain. Dr. Colvin diagnosed her with neuropathy and degenerative joint disease. Royals next visited Dr. Colvin on March 2, 2010, complaining of pain in her feet and in her legs.
Dr. Colvin also testified that he received a history form from Royals. It was then that he learned that she a right total knee replacement in 2002. He also learned that she suffered from a number of other ailments including |10failing vision, ringing in the ears, sinus trouble, hypertension, chest pain, swelling of the ankles, indigestion, heartburn, depression, pneumonia, chronic *1082 cough, asthma, wheezing, diarrhea, muscle weakness, numbness, tingling, back pain, arthritis, and memory loss.
Dr. Colvin treated Royals on November 22, 2010, when she complained of pain and swelling in her right leg. After examining her, he determined that it was “muscle strain versus phlebitis and cellulitis.” On December 14, 2010, Royals went to see Dr. Colvin, complaining of swelling in her feet and shortness of breath. Dr. Colvin testified that he was under the impression that Royals had hypertension, and the swelling of the feet was a symptom of that diagnosis. Additionally, Dr. Colvin’s records showed that she was admitted to the hospital on August 4, 2012, for congestive heart failure.
Although Dr. Colvin admitted that he had treated Royals for right knee pain, he noted that “her primary problem has been her congestive heart failure.” Dr. Colvin has never ordered, nor has he reviewed, imaging studies for Royals’ knees. Dr. Colvin testified that he primarily treated her for obesity, congestive heart failure, and diabetes. He further testified that his knowledge of her overall health condition relates to her congestive heart failure, thrombosis, swelling of the legs, and diabetes. He noted that Royals is morbidly obese, weighing approximately 400 pounds.
In a letter dated June 16, 2013, Dr. Colvin was asked to give his impression of Royals’ disability. He noted that she was totally and permanently disabled from work, and that her obesity contributed to her | ,, congestive heart failure and arthritis. He stated that her right knee was very painful, and that she has very limited range of motion. He also noted that he “does not think she should undergo functional capacity exam due to poor conditioning.” Dr. Colvin testified that any impression regarding the extent of any disability to her knee came solely from Royals relaying that information to him.
It is clear that the opinions of Dr. Olinde and Dr. Colvin regarding Royals’ disability status are limited to the ailments that they treated her for, which included obesity, congestive heart failure, hypertension, and diabetes. Their opinions regarding her work-related, right knee injury are solely based on information that Royals offered during her doctor visits. No formal evaluations were made by either doctor. Dr. Colvin admitted that his knowledge of Royals’ overall health was limited to her congestive heart failure, thrombosis, swelling of the legs, and diabetes. Dr. Olinde deferred to Royals’ previous surgeon, Dr. Brown, concerning any work restrictions placed on her regarding her knee. On August 17, 2005, Dr. Brown fully released Royals back to work.
After carefully reviewing the testimony and evidence presented, we find no manifest error in the WCJ’s determination that Royals failed to prove by clear and convincing evidence that the September 9, 2002, injury produced her current disability. We agree with the WCJ’s determination that there was no medical evidence that Royals’ knee injury caused her current disability.
| ^Attorney Fees
In Royals’ second assignment of error, she argues that the WCJ erred in failing to award penalties and attorney fees for Richwood’s wrongful termination of benefits and wrongful failure to pay benefits for PTD. Royals contends that penalties and attorney fees should be awarded for wrongful discontinuance of benefits and if not that, for failure to pay benefits for PTD. She argues that when Richwood terminated the SEB, it had no medical information indicating that she was able to work at all. She argues that her doctors have indicated that she is totally and permanently disabled. Royals has difficulty walking, and she believes *1083 that there is no way she could maintain any kind of employment. Under these-circumstances, Royals argues that the termination of her benefits was arbitrary and capricious, and that penalties and attorney fees should be awarded.
Awards of penalties and attorney fees in workers’ compensation cases are essentially penal in nature, being imposed to discourage indifference and undesirable conduct by employers and insurers. Iberia Medical Ctr. v. Ward, 2009-2705 (La.11/30/10), 53 So.3d 421; Harris, supra. Although the Workers’ Compensation Act is liberally construed as to benefits, its penal provisions are strictly construed. Id. Arbitrary and capricious behavior consists of “willful and unreasoning action, without consideration and regard for the facts and circumstances presented, or of seemingly unfound motivation.” Harris, supra; Futch v. Horseshoe Casino, 49,144 (La.App.2d Cir.7/23/14), 146 So.3d 818, writ denied, 2014-1934 (La.11/21/14), 160 So.3d 973.
11sThe WCJ has great discretion in awarding or denying penalties and attorney fees. The WCJ’s decision concerning whether to assess statutory penalties and attorney fees will not be disturbed absent an • abuse of discretion. Harris, supra; Slade v. State ex rel. Univ. of La. at Monroe, 46,720 (La.App.2d Cir.11/9/11), 79 So.3d 463.
An unsuccessful claimant is not entitled to penalties and attorney fees. Patterson v. General Motors Co., 46,559 (La.App.2d Cir.9/21/11), 73 So.3d 465; Fox v. Reynolds Indus. Contractors, Inc., 48,660 (La.App.2d Cir.2/13/14), 135 So.3d 105.
Since Royals was not successful in this matter, she is not entitled to penalties and attorney fees. Further, Richwood reasonably controverted this claim. Therefore, the WCJ did not abuse her discretion when she denied Royals an award of penalties and attorney fees.
CONCLUSION
For the aforementioned reasons, we affirm the WCJ’s judgment. Costs are assessed to the appellant, Donna Royals.
AFFIRMED.