Judgment rendered August 10, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,477-WCA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

VICTOR TAYLOR                                    Plaintiff-Appellant

versus

BOBBY ARMSTRONG                                  Defendant-Appellee

* * * * *

Appealed from the
Office of Workers' Compensation, District 1-W
Parish of Caddo, Louisiana
Trial Court No. 09-06872

Shannon Bruno Bishop
Workers' Compensation Judge

* * * * *

| | |
|---|---|
| WILLIAMS FAMILY LAW FIRM LLC<br>By: Joseph Payne Williams | Counsel for Appellant,<br>Victor Taylor |
| WILLIAM DANIEL DYESS | Counsel for Appellee,<br>Bobby Armstrong |
| JUGE, NAPOLITANO, ET AL.<br>By: John V. Quaglino | Counsel for Appellee,<br>International Paper Co. |
| CHRISTOVICH & KEARNEY, LLP<br>By: Philip J. Borne<br>   K. Blair Johnson | Counsel for Appellee,<br>James Brady d/b/a<br>Brady Timber Inc. |
| BRAINARD & BRAINARD LLC<br>By: Eron J. Brainard | Counsel for Appellee,<br>Evergreen Timber Corp. and<br>Armistead Land & Timber Co. |

* * * * *

Before STEPHENS, THOMPSON, and MARCOTTE, JJ.

**STEPHENS, J.**

In this workers' compensation case, claimant, Victor Taylor ("Taylor"), has appealed from a January 20, 2022, judgment that incorporated, *inter alia*, three rulings dated August 25, 2016, that granted summary judgment to and dismissed Taylor's claims against defendants Evergreen Timber Corporation and Armistead Land and Timber Company ("Evergreen Timber"), International Paper Company ("IPC"), and James Brady d/b/a/ Brady Timber, Inc. ("Brady Timber").[1]  For the reasons set forth below, we affirm.

### FACTS/PROCEDURAL BACKGROUND

On June 24, 2009, Taylor was seriously injured as he was cutting down a tree while working as a saw hand for Armstrong, his employer. Taylor filed a workers' compensation claim seeking benefits from Armstrong, Evergreen Timber, IPC, Brady Timber, and Hartford Indemnity Insurance Company ("Hartford"), Brady Timber's workers' compensation insurer.  Armstrong, Taylor's direct employer, did not have workers' compensation insurance at the time of Taylor's accident.

Three separate motions for summary judgment were filed:  one by Evergreen Timber, one by IPC, and one by Brady Timber.  The following "undisputed material facts" were urged by the parties:

IPC

- In 2007, International Paper Company and Brady Timber, Inc., entered into a contract where Brady agreed to sell timber to International Paper.

---

[1] Also incorporated into this judgment was a motion to dismiss with prejudice claimant Victor Taylor's claims against defendant Bobby Armstrong due to his bankruptcy discharge.

- The contract between Brady and International Paper did not contain an express provision declaring International Paper to be the statutory employer of any of Brady's employees.
- International Paper did not have any authority to direct the work of Armstrong or Taylor.
- Prior to his accident, Taylor never had any interaction with any representative of International Paper.

Brady Timber

- Armstrong, on his own, made a deal with a landowner for removal of storm-damaged timber, as Armstrong is in the timber business.
- Armstrong was harvesting timber in order to deliver it to International Paper at their mill in Mansfield, Louisiana. He took all his loads from this particular job there.
- To enter this mill, Armstrong needed an access or gate pass.
- Evergreen Timber supplied these to Bobby Armstrong.
- Evergreen Timber in turn got the access cards from Brady Timber. Vinson Drake is the one-half owner of Evergreen. He wanted to have a contract with International Paper whereby he would have access cards to give loggers, but International Paper already had all the contracts it needed in place.
- Evergreen Timber knew from past experience that Brady Timber had access cards, so Drake used those.
- Brady Timber allowed Evergreen Timber to deliver logs without any control other than supplying Evergreen Timber with International Paper access cards.
- Brady Timber had no control over to whom Evergreen supplied those cards.
- James Brady does not know Bobby Armstrong or claimant.
- Brady did at one time procure timber, but after 2003, it exclusively sold timber.
- In 2009, Brady performed timber procurement.
- Brady had no written contract with Evergreen Timber.
- Brady had no written contract with Armstrong.
- Brady had timber suppliers other than Evergreen Timber.

Evergreen Timber

- At the time of his accident of June 24, 2009, Taylor was working only for Armstrong, and under the sole supervision and control of Armstrong. Taylor had no interaction with any representative of Evergreen Timber Corporation concerning his job duties.
- On and before June 24, 2009, Evergreen Timber Corporation did not have a contract with Bobby Armstrong, Brady Timber, Inc., or International Paper Company to harvest, deliver, or sell wood.
- No party has produced any evidence that Taylor or Armstrong had any obligation to Evergreen Timber, including, but not limited to, do any work for, or to provide any timber or timber receipts to, Evergreen Timber. Nor is there any evidence that Evergreen Timber

2

had any obligation to do anything for Brady Timber or International Paper.

<u>Claimant Victor Taylor</u>

- Victor Taylor was a direct employee for Bobby Armstrong working as a saw hand for Armstrong on June 24, 2009, when a tree that he was cutting fell and severely injured Taylor.
- International Paper on June 24, 2009, had in full force and effect a Master Wood Purchase and Service Agreement with Brady Timber which specifically provided that International Paper:
    - owns and operates wood products, pulp, and paper facilities throughout the United States;
    - utilizes wood (herein defined) in the manufacturing of wood, pulp, and paper products;
    - is the owner of certain land, timber and/or has timber cutting rights.
- Brady Timber set forth its business in the International Paper Master Wood Purchase and Service Agreement as follows. Brady Timber:
    - is the owner of certain land, timber, or has timber cutting rights;
    - is engaged in the business of cutting, converting and/or transporting wood;
    - has available all necessary equipment and labor to perform such services;
    - undertakes and agrees to sell, deliver, cut, convert, and/or transport to buyer and other designated destinations and buyer undertakes and agrees to purchase and/or accept from seller, those certain quantities of pulpwood, saw timber, end wood chips, residual chips, chip mill chips, fuel, fiber fuel, poles, piling or other forest products.
- In carrying out the trade, business, and occupation of International Paper and Brady Timber, the latter obtained from International Paper authorization cards which authorized the holder to deliver to International Paper's mill in Mansfield, LA, and provided those cards to Evergreen Timber.
- Evergreen Timber provided the authorization card to Bobby Armstrong, the direct employer of Victor Taylor, which allowed Bobby Armstrong to deliver wood to the International Paper mill in Mansfield, LA.
- Bobby Armstrong would obtain the load tickets from International Paper and provide those load tickets to Evergreen Timber, which in turn paid Bobby Armstrong for the timber cut and delivered by Bobby Armstrong to International Paper, which sums were used to pay the timber owner and Bobby Armstrong employees including plaintiff, Victor Taylor.
- Evergreen Timber would then supply the load tickets obtained from Bobby Armstrong to Brady Timber, and be paid for the load tickets. Brady Timber would be paid by International Paper for the wood delivered to International Paper under the Master Wood Purchase and

Service Agreement which was all part of defendant's trade, business, and occupation.

- Victor Taylor has not been paid any sums for indemnity and or medical expenses as a result of his injuries on June 24, 2009.

On August 25, 2016, the WCJ signed three separate orders in which the motions for summary judgment were granted based upon the court's determination that each defendant had established that it was not Taylor's employer and had no obligation to provide workers' compensation benefits to him. Hartford was dismissed from this action in a separate order dated October 24, 2016.

Taylor appealed the August 25, 2016, orders in No. 51,772-WCA, but, during jurisdictional review of the orders, this Court determined that the rulings were not final and appealable judgments as La. C.C.P. art. 1915(A) does not apply in workers' compensation cases, and the claim against defendant Armstrong was still pending. Thus, the appeal was dismissed on July 21, 2017.

Armstrong filed a motion to dismiss all claims against him based on his discharge in bankruptcy. On April 28, 2021, the WCJ issued an order dismissing Armstrong from the workers' compensation proceeding in light of his bankruptcy discharge. After this Court determined that this latest order was not a final and appealable judgment, due to its lack of the requisite decretal language in accordance with La. C.C.P. art. 1918, an order was issued, and the matter was remanded to the WCJ. The WCJ rendered a judgment in compliance with this Court's order and noted that "[a]ll parties indicated no opposition to the dismissal of Bobby Armstrong due to his bankruptcy discharge." It is from this judgment that Taylor has appealed.

4

## DISCUSSION

### *Taylor's Argument*

Contrary to the WCJ's findings in support of her ruling granting summary judgment, Taylor urges that he was the statutory employee of defendants Evergreen Timber, Brady Timber, and IPC. According to Taylor, Armstrong, his direct employer, had an oral contract with Evergreen Timber to work through that company's access to "scan cards" issued by IPC to Brady Timber, who then issued the "scan cards" to Evergreen Timber. At the time of Taylor's accident, Evergreen Timber had agreements with producers such as Armstrong and others to find and harvest timber, then deliver that timber to IPC's mill. In order to gain access to IPC mill property, a producer such as Armstrong needed a "scan card" that identified the contractor (in this case, Brady Timber) through which they were working; Brady Timber actually had a written contract with IPC, notes Taylor.

Under La. R.S. 23:1061(A)(1), argues Taylor, his work of cutting down the trees was essential to or an integral part of Evergreen Timber's (and Brady Timber's) ability to profit off the wood being delivered and sold to IPC. The receipt and purchase of wood was essential to IPC's production of wood products. Taylor's employer, Armstrong, obtained access to the IPC mill through "scan cards" provided by Evergreen Timber, who obtained them from Brady Timber, who received the cards as a result of its written contract with IPC. According to Taylor, these three businesses who made money off of his work are all his statutory employers within the intendment of La. R.S. 23:1061(A)(2).

5

According to Taylor, the WCJ's orders granting the defendants' motions for summary judgment have had the effect of interposing between them and Taylor his direct employer Armstrong, aka the "impecunious contractor," leaving Taylor with no remedy because his direct employer Armstrong is bankrupt.

***IPC's Argument***

IPC first argues that it cannot be liable to Taylor for workers' compensation benefits because it was acting only in its capacity as a purchaser of timber in this case. IPC entered into a contract with Brady Timber wherein IPC agreed to buy and Brady Timber agreed to sell timber. IPC notes that the contract between it and Brady Timber (incidentally, the only written contract between the parties in this case) specifically disavows any employment relationship between it and Brady Timber.

IPC also contends that Taylor is not its statutory employee under the two-contract theory contemplated by La. R.S. 23:1061(A)(2). IPC is not in the middle of two contracts, and as such, as a matter of law, cannot be Taylor's employer. IPC further asserts that there is no written contract in this case in which IPC expressly claims statutory employer status. The only written contract—the buy-sell agreement between IPC and Brady Timber— expressly disclaims any employment relationship. IPC cannot be considered Taylor's statutory employer unless the two-contract applies; as it does not, under the facts of this case, the WCJ properly granted IPC's motion for summary judgment.

***Brady Timber's Argument***

Brady Timber contends that it is not Taylor's statutory employer because there is no written contract between it and Taylor or between it and

6

Armstrong, Taylor's employer. Brady Timber asserts that in this case, as in *Fee v. Southern Packaging, Inc.*, 2018-1364 (La. App. 1 Cir. 5/24/19), 277 So. 3d 787 (in which the First Circuit held that the timber dealer was not the claimant's statutory employer because the second requirement of the two-contract theory of statutory employment was not met (i.e., that pursuant to the principal's contract with a third party work must be performed)), the contract between IPC and Brady Timber does not obligate it to harvest or supply IPC with timber. Instead, Brady Timber is merely an authorized seller. Brady Timber had no obligation to cut the timber on the storm tract where Taylor's accident occurred. All Brady Timber did was provide Armstrong with an ability to bring his timber to IPC's mill by supplying him with a scan card (indirectly) through Evergreen Timber.

Brady Timber urges that it simply provided access cards to IPC's mill to various haulers and harvesters such as Armstrong. Taylor has failed to provide factual support sufficient to establish that Brady Timber contractually obligated itself for the performance of Taylor's work. As Brady Timber is not Taylor's statutory employer, it has no compensation obligation under La. R.S. 23:1061(A). Summary judgment was properly granted, and this Court should affirm the WCJ's order.

### Evergreen Timber's Argument

To be entitled to compensation benefits from Evergreen Timber, Taylor must establish that he was a direct employee or statutory employee of the timber company. Taylor testified in his deposition that he was not a direct employee of Evergreen; Armstrong was his employer. There is no evidence that Taylor had any interaction with an Evergreen Timber representative concerning his job duties.

7

Thus, to recover any benefits from Evergreen Timber, Taylor must show that Evergreen Timber was his statutory employer at the time of the accident, which he cannot do. There is no evidence that Evergreen Timber undertook to execute any work, or contracted to perform any work for anyone. By the clear terms of the statute, Evergreen Timber is not a principal and was entitled to summary judgment.

Evergreen Timber urges that the "two-contract" theory of statutory employment provided for by La. R.S 23:1061(A)(2) does not apply. Prior to Taylor's accident, Brady Timber entered into a written contract with IPC regarding the sale of wood. Brady Timber provided Evergreen Timber with "scan cards" issued to Brady Timber by IPC, which Evergreen Timber gave to wood haulers such as Armstrong, so they could gain access to the IPC mill for their deliveries. Once Armstrong delivered a load of wood to IPC, he sold Evergreen Timber the ticket for the delivery from IPC for a discounted price. Evergreen Timber then brokered that ticket to Brady Timber for a greater price, and Brady Timber was subsequently paid by IPC for the wood delivery at their contracted price.

Evergreen Timber claims it had no relationship with Brady Timber except to sell it the receipts Evergreen Timber purchased from Armstrong. Evergreen Timber was not obligated to provide any services, nor was Armstrong obligated to provide services to Evergreen Timber. According to Evergreen Timber, Armstrong could have sold the delivery tickets directly to Brady Timber or another broker. Evergreen Timber urges it had: no involvement in Armstrong's dealings with the landowners from whom he harvested timber; no involvement in Armstrong's selection of a harvest site;

8

and a lack of supervision or control over the manner in which Armstrong harvested timber.

The evidence shows that neither criterion for a two-contract statutory employer relationship was met in this case. Under the facts of this case, Evergreen Timber is not a statutory employer under the two-contract theory. Evergreen Timber urges this Court to affirm the WCJ's ruling granting its motion for summary judgment.

### *Applicable Legal Principles*

Appellate courts review summary judgments *de novo* under the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. *Leisure Recreation & Entertainment, Inc. v. First Guaranty Bank,* 2021-00838 (La. 3/25/22), ___ So. 3d ___, 2022 WL 883911; *Elliott v. Continental Casualty Co.*, 2006-1505 (La. 2/22/07), 949 So. 2d 1247; *Reynolds v. Select Properties, Ltd.*, 1993-1480 (La. 4/11/94), 634 So. 2d 1180; *Davis v. Whitaker*, 53,850 (La. App. 2 Cir. 4/28/21), 315 So. 3d 979. A motion for summary judgment will be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3).

In discussing the genesis of the doctrine of statutory employment in Louisiana, the Louisiana Supreme Court wrote:

> Workers' compensation legislation was enacted in the early decades of the twentieth century, not to abrogate existing tort remedies that afforded protection to workers, but to provide social insurance to compensate victims of industrial accidents because it was widely believed that the limited rights of recovery under tort law were inadequate to protect these individuals. *Roberts v. Sewerage and Water Board of New Orleans*, 92-2048 (La. 3/21/94), 634 So. 2d 341, 345, *citing Boggs v. Blue Diamond Coal Co.*, 590 F. 2d 655 (6th Cir. 1979).

9

> The legislation reflects a compromise between the competing interests of employers and employees: the employer gives up the defense it would otherwise enjoy in cases where it is not at fault, while the employee surrenders his or her right to full damages, accepting instead a more modest claim for essentials, payable regardless of fault and with a minimum of delay. *Id.*
>
> The legislatures that adopted the early workers' compensation acts feared that employers would attempt to circumvent the absolute liability those statutes imposed by interjecting between themselves and their workers intermediary entities which would fail to meet workers' compensation obligations. Frank L. Maraist and Thomas C. Galligan, Jr*., The Employer's Tort Immunity: A Case Study in Post-Modern Immunity*, 57 La. L. Rev. 467, 488 (1997). To assure a compensation remedy to injured workers, these legislatures provided that some principals were by statute deemed, for purposes of liability for workers' compensation benefits, the employers of employees of other entities. *Id.* The legislative approaches to what is commonly referred to as the "statutory employer" doctrine varied.
>
> *Allen v. State ex rel. Ernest N. Morial–N.O. Exhibition Hall Authority*, 2002-1072 (La. 4/9/03), 842 So. 2d 373, 377-78.

Under Louisiana's Workers' Compensation Act (the "LWCA"), an employer is liable for compensation benefits to an employee who is injured by an accident arising out of and in the course of his employment. La. R.S. 23:1031(A); *McLin v. Industrial Specialty Contractors, Inc.*, 2002-1539 (La. 4/2/03), 851 So. 2d 1135; *Spillman v. Career Adventures, Inc.*, 54,054 (La. App. 2 Cir. 8/11/21), 324 So. 3d 1123; *Royals v. Town of Richmond*, 49,582 (La. App. 2 Cir. 4/29/15), 165 So. 3d 1075, *writ denied*, 2015-1050 (La. 9/11/15), 177 So. 3d 710. The LWCA applies both to a direct employer/employee relationship as well as to a statutory employer/employee relationship. *Badeaux v. St. Tammany Parish Hospital Service District No. 1*, 2021-1229 (La. App. 1 Cir. 6/3/22), ___ So. 3d ___, 2022 WL 1830801; *Mitchell v. Southern Scrap Recycling, L.L.C.*, 2011-2201 (La. App. 1 Cir. 6/8/12), 93 So. 3d 754, *writ denied*, 2012-1502 (La. 10/12/12), 99 So. 3d 47.

10

Louisiana adopted a broad version of the statutory employer doctrine. *Allen*, *supra*. The LWCA expressly extends the employer's compensation obligation ***and*** its corresponding tort immunity to "principals." La. R.S. 23:1061 establishes the workers' compensation responsibility of a principal under the statutory doctrine, and the corollary provision, La. R.S. 23:1032, which states that the rights and remedies available to an employee or his dependent under the LWCA are "exclusive of all claims, including any claims that might arise against his employer or any principal." *Id*.

There are alternative bases for imposing the workers' compensation obligation on entities that are not direct employers. *Allen*, 842 So. 2d at 378. A "principal" or "statutory employer" is any person who undertakes to carry out any work which is part of his trade, business, or occupation by means of a contract with another (the "trade, business, or occupation" defense); or, any person who has contracted to perform work and sublets any portion to another (the "two-contract" theory). La. R.S. 23:1061; *Allen*, *supra*; *Sibert v. National Oilwell Varco, L.P.*, 48,789 (La. App. 2 Cir. 2/26/14), 136 So. 3d 283; *Freeman v. Moss Well Services*, 614 So. 2d 784 (La. App. 2 Cir. 1993), *writ denied*, 618 So. 2d 413 (La. 1993); *Bradford v. Village Insurance Co.*, 548 So. 2d 106 (La. App. 2 Cir. 1989), *writ denied*, 552 So. 2d 396 (La. 1989).

In the instant case, Taylor's claim for a relationship of statutory employment with all of the defendants is based upon the "two-contract" theory set forth in La. R.S. 23:1061(A)(2).[2] Under the two-contract theory

---

[2] La. R.S. 23:1061(A)(3) is inapplicable in this case, as there were no written contracts between a principal and Armstrong, Taylor's immediate employer or a statutory employer recognizing that principal as a statutory employer. The only written contract in this case, the one between IPC and Brady Timber, expressly disavows the creation or existence of such a relationship.

11

of statutory employment, the party seeking to invoke statutory employment must prove that: (1) the principal entered into a contract with a third party; (2) pursuant to that contract, work must be performed; and (3) in order for the principal to fulfill its contractual obligation to perform the work, the principal entered into a subcontract for all or part of the work performed. *Allen*, *supra*. The two-contract theory contemplates relationships between at least three parties: a general contractor, hired by a third party to perform a specific task; a subcontractor, hired by that general contractor; and an employee of the subcontractor. *Thomas v. DOTD*, 27,203 (La. App. 2 Cir. 10/12/95), 662 So. 2d 788; *Freeman*, *supra*.

The party common to both contracts, typically a contractor who entered an agreement with an owner and subcontracted the work to another party, becomes the statutory employer of the subcontractor's employees. The nature of the work, particularly whether it falls within the principal's trade, business, or occupation, is irrelevant to this determination. *Allen*, 842 So. 3d at 378-79; *Spears v. Exxon Mobil Corp. and Turner Industries Group, L.L.C.*, 2019-0309 (La. App. 1 Cir. 12/17/19), 291 So. 3d 1087, 1091-92.

In *Fee v. Southern Packaging, Inc.*, 2018-1364 (La. App. 1 Cir. 5/24/19), 277 So. 3d 787, the claimant, Walter Fee, was injured while working as a logger for B&W Logging Company ("B&W"). Due to the insolvency of B&W's workers' compensation insurer, Fee sought workers' compensation benefits under the two-contract theory from a timber dealer, Pineville Forest, as well as a timber buyer, Southern Packaging. Prior to the accident, Southern Packaging had entered into a timber deed with the Porciau family which provided it with the right to harvest timber by a

specified date; there was no requirement, however, that Southern Packaging actually harvest any timber. Additionally, there were no written contracts between any of the parties.

Following trial on the merits in *Fee*, the WCJ found that Southern Packaging was Fee's statutory employer, but Pineville Forest was not. The appellate court affirmed the WCJ's ruling in favor of Pineville Forest, in which the WCJ concluded that Pineville Forest was simply a middleman for purposes of giving Fee the ability to pay himself and his crew on a weekly basis. *Fee*, 277 So. 3d at 795. The First Circuit reversed the WCJ's determination that Southern Packaging was Fee's statutory employer, based upon the Court's finding that Fee failed to produce evidence that Southern Packaging, *who was not required to harvest timber*, contracted to perform work which it then subcontracted with Fee's direct employer B&W to perform.

The First Circuit emphasized that the timber deed involved in *Fee* "clearly and unambiguously gave Southern Packaging only the right to harvest timber. *It did not impose an obligation upon Southern Packaging to perform work*, a requirement necessary to establish a statutory relationship pursuant to the two-contract theory." *Id.* at 800. (Emphasis added). The court in *Fee* also cited *Beaver v. Exxon Mobil Corp.*, 361 F. Supp. 2d 565 (M.D. La. 2005), in support of its holding.

In *Beaver*, *supra*, a tort case in which several defendants, including ExxonMobil, were seeking statutory employer status to avoid tort liability to a plaintiff injured in the parking lot of the ExxonMobil refinery, the U.S. district court began its analysis with pointing out that, in order to successfully raise the two-contract defense, a defendant must establish all

13

three requirements set forth by the Louisiana Supreme Court in *Allen*. In

*Beaver*, the district court observed:

> When examining the facts at hand, it appears ExxonMobil
> cannot meet the requirements set forth in *Allen.* For example,
> ***ExxonMobil was not required to perform work in order to***
> ***fulfill its contractual obligation. Furthermore, ExxonMobil***
> ***did not enter into a subcontract for any work that it was***
> ***allegedly to perform. It merely entered into one contract with***
> ***Fluor Daniel***, which was obligated to perform work to fulfill its
> contractual obligation to ExxonMobil, and Fluor Daniel
> subcontracted part of the work to be performed to J.E. Merit.
> ExxonMobil's only obligation was to pay Fluor Daniel for
> services rendered. For these reasons Exxon Mobil seemingly
> does not meet the elements established by the *Allen* Court. *Id.*
> at 567-68. (Emphasis added).

*Analysis*

As noted by the First Circuit in *Spears, supra*, it is the party common

to both contracts in a two-contract situation who becomes an injured

employee's statutory employer. It is undisputed that IPC is party to only one

contract in this case—the written contract it has with Brady Timber. *See*

*also Beaver, supra*. IPC is not a common party to two contracts and is not,

as a matter of law, Taylor's statutory employer under La. R.S. 23:1061. As

such, we find no error in the WCJ's grant of summary judgment to IPC. *See*

*also Thomas*, *supra.*

It cannot be denied that Brady Timber and Evergreen Timber, and

Evergreen Timber and Armstrong Timber, in fact had agreements, albeit

verbal ones, to do business with each other. However, our inquiry does not

end there. As noted above, to find statutory employment under the two-

contract theory, all three requirements set forth in La. R.S. 23:1061, as

interpreted by the courts, *see, inter alia, Allen*, *supra*, must be present. In

this case, requirement two, which is that pursuant to a principal's contract

with a third party ***work must be performed***, was not satisfied. The

14

deposition testimony of each of the parties is clear: ***no one was obligated*** to perform any work under the oral agreements they made with one another. Therefore, neither Brady Timber nor Evergreen Timber was Taylor's statutory employer under the facts of this case. *See, Fee*, 277 So. 3d at 798; *Beaver*, 361 F. Supp. 2d at 568. For this reason, we find that the WCJ's summary judgment rulings in favor of both Brady Timber and Evergreen Timber were legally correct.

## CONCLUSION

For the reasons set forth above, the judgment of the workers' compensation judge is affirmed. Costs of this appeal are assessed to claimant, Victor Taylor.

**AFFIRMED.**